SAMUEL H. RANDALL, Respondent, *v.* GEORGE W. PACKARD,
Appellant.

SAME, Respondent, *v.* SAME, Appellant.

The result of a lawyer's services is a proper and an important element to
be taken into consideration in determining their value.

A judgment should not be reversed upon an exception to a remark of the
trial judge, which, although erroneous standing by itself, was so
coupled with other statements as to modify it and give the correct
rule.

In an action by an attorney to recover compensation for professional serv-
ices, the court charged in substance that in estimating the value of
plaintiff's services, "several circumstances must enter into the compu-
tation, *i. e.*, the professional reputation of plaintiff for ability and integ-
rity, the difficulty and importance of the case, the amount of work and
labor performed, the amount involved, the pecuniary ability of the client,"
and after a general discussion of these considerations stated, "the main
element after all in determining the value of the lawyer's services is the
result," adding, "a charge must be adjusted to the benefit, in a meas-
ure at all events.  *  *  *  Undoubtedly a lawyer  *  *  *  will not
charge as much if his client be unsuccessful.  *  *  *  You must look to
the benefit." *Held*, that the charge, taken as a whole, simply conveyed
the idea that while the result was an important element to be considered,
it was only one of the several elements specified, and so there was no
error.

A motion for a new trial was made after judgment for plaintiff, on
the ground that he had sworn falsely upon his cross-examination on
the trial, in denying he had been disbarred as an attorney. *Held*, that
as from the proofs presented on the motion it was a debatable ques-
tion, admitting of opposing inferences as to whether plaintiff had been
actually disbarred, in the legal sense of that word, it could not be said,
as matter of law, that he had sworn falsely, and that the decision of the
court below denying the motion was not reviewable here.

(Argued February 26, 1894; decided April 10, 1894.)


APPEAL from judgment of General Term of the Court of
Common Pleas for the city and county of New York, entered
upon an order made November 7, 1892, which affirmed a judg-
ment in favor of plaintiff entered upon a verdict, and also
affirmed an order denying a motion for a new trial.

Appeal also from order of same court, made November 7, 1892, which affirmed an order of Special Term denying a motion for a new trial made after judgment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wheeler H. Peckham* for appellant. The court erred in its charge that the main element after all in determining the value of a lawyer's services is the result of his labor. (*Matthews* v. *Bliss*, 22 Pick. 53.)

Points on appeal from order:

The court has jurisdiction of this appeal. (*People* v. *Fire Comrs.*, 106 N. Y. 257.) It was error in the courts below to deny defendant's motion for a new trial. (*People* v. *McGuire*, 2 Hun, 270, 271; *Holty* v. *Schmidt*, 12 J. & S. 327; *Weber* v. *Weber*, 5 N. Y. Supp. 178; *Patrie* v. *Milles*, 3 Douglas, 27; *Harrison* v. *Harrison*, 9 Price, 89; *Morrell* v. *Kimball*, 1 Greenl. 322; *Wehrkamp* v. *Willet*, 1 Daly, 4.) If we look at the opinion of the court below it becomes clear that the court has erred, and not merely exercised a discretion. (*Mead* v. *Burns*, 32 Hun, 275; 7 Wall. 523; *Hinckley* v. *Miles*, 15 Hun, 170.)

*Samuel H. Randall*, respondent, in person. It was a matter for the discretion of the General Term whether or not to set aside the verdict as excessive. The exercise of this discretion is not reviewable here. (*Peck* v. *R. R. Co.*, 70 N. Y. 587; *McKeever* v. *Mayor*, 11 Wkly. Dig. 258.) The court's charge, " the main element after all in determining the value of a lawyer's services is the result of his labor; a charge must be adjusted to the benefit in a measure, at all events, so you inquire what was the benefit to this defendant rendered by this plaintiff," etc., was manifestly correct, especially when considered with reference to plaintiff's testimony, that he considered this largely a contingent case, and defendant was told the amount of his charge of $20,000 to $25,000 would be dependent largely on his being successful or unsuccessful. (*In re Hynes*,

105 N. Y. 560; *Garfield* v. *Kirk*, 65 Barb. 464; *Betts* v. *Betts*, 4 Abb. [N. C.] 317; *People* v. *S. Bank*, 10 id. 15; *Marsh* v. *Holbrook*, 3 Abb. Ct. App. Dec. 176.) It is sufficient in an appellate court that the general charge lays down the law correctly as a whole. An appellant is bound to show substantial error, and abstract consideration of isolated or fragmentary parts of the charge cannot be permitted to prevail as presenting error requiring reversal. (*Hickenbottom* v. *R. R. Co.*, 122 N. Y. 91; *Losee* v. *Buchanan*, 51 id. 492; *Caldwell* v. *S. Co.*, 47 id. 282; *Sperry* v. *Miller*, 16 id. 412; *Carpenter* v. *T. Co.*, 71 id. 578; *R. Co.* v. *Estil*, 147 U. S. 614.)

Points on appeal from order:

If there was no "proceeding" against the respondent in the Superior Court of Massachusetts, there could have been no "disbarment," and his testimony upon the trial was true. If respondent believed or had reasonable cause or foundation to believe he had never been disbarred, then his testimony was not willful nor corrupt, but may be fairly attributed to mistake or infirmity, and the testimony being also immaterial, together with its being no surprise to defendant, no just reason existed why a new trial should have been granted. (*Deering* v. *Metcalf*, 74 N. Y. 501; *Dynes* v. *Hoover*, 20 How. [U. S.] 82; *Ditcher* v. *Dennison*, 11 Moore's P. C. 324.) Under the Constitution and laws of Massachusetts in 1864, an attorney could only be removed from his office, "stricken from the rolls," or "disbarred" by the Supreme Judicial Court, or the Superior Court, upon charges of deceit, malpractice or other gross misconduct, filed in court, and after notice to answer to such charges or appearance by the attorney, and a judicial hearing on trial by the court. The power is conferred upon the court and not upon an individual judge of the court, and the judgment of removal must be a judicial act. (*U. S.* v. *Clark*, 1 Gall. 497; *U. S.* v. *Arredondo*, 6 Pet. 709; *Sheldon* v. *Newton*, 3 Ohio St. 498; *Devane* v. *Calching*, 2 How. [Miss.] 884; *Seal* v. *Dorsee*, 9 Moore's P. C. 411; *King* v. *Wardens*, 5 M. & S. 254; *Houlden* v. *Smith*, 14 A. & E. [N. S.] 841; *Queen* v. *Bolton*,

L. R. [1 Q. B.] 71; Prescott's Trial, 164, 165, 178; *Dewhurst* v. *Coulthard,* 3 Dal. 409; *Calder* v. *Halket,* 3 Moore's P. C. 28.) The office of an attorney is a right, license, freehold or privilege, and wherever the rules of the common law prevail, no person once vested with this right can be deprived of it without "due process of law." (*Harcourt* v. *Fox,* Show. 428; 2 Peckwell's Cases, 89; *Ex parte Hennen,* 13 Pet. 259; *Hurst's Case,* 1 Levintz, 75; *Ex parte Garland,* 4 Wall. 333; *Cummings* v. *Missouri,* Id. 277; *Ex parte Austen,* 5 Rawle, 194; *Vise* v. *County of Hamilton,* 19 Ill. 78; *In re Dorsay,* 7 Porter, 381; *Ex parte Cooper,* 22 N. Y. 67; *Saxton* v. *Stowell,* 11 Paige, 526; 22 Wend. 656; *In re Attorney,* 83 N. Y. 164; *Ex parte Brewster,* 12 Hun, 109.) "Due process of law," as applicable to the divesting of an attorney of his office or license, or of any other person of a freehold office, does not mean the exercise of arbitrary or discretionary power by a judge, but of the summary jurisdiction of the court. And the summary jurisdiction of a court does not mean that a judge of the court can lawfully exercise an arbitrary power, will or discretion, without any process of law at all, but it is the exercise of the discretionary power vested by the law in the court to proceed upon summary process, in those cases wherein the law has deemed the exercise of such power to be necessary by the court, without the intervention of a jury. (*People* v. *Turner,* 1 Cal. 151; *People* v. *Smith,* 3 Caines, 221; *Chapman's Case,* 11 Ohio, 430; *In re Pitman,* 1 Curtis C. C. 131; *Darby's Case,* 3 Wheeler Cr. Cas. 5; *Bradley's Case,* 19 Mass. Law Rep. 430; *Gorham* v. *Luckett,* 6 B. Mon. 146, 638; *Van Zandt* v. *Waddell,* 2 Yerg. 260; *Rex* v. *Young,* 1 Burr, 563; *Witman* v. *Ely,* 4 S. & R. 265; *Harvie* v. *Cammack,* 6 Dana, 243; *Piper* v. *Pearson,* 2 Gray, 120; *Lewis* v. *Garrett,* 5 How. [Miss.] 434; *Taylor* v. *Porter,* 4 Hill, 145; *Norman* v. *Herst,* 5 W. & S. 193; *Ervin's Appeal,* 16 Penn. 263; *Wynehammer* v. *People,* 3 Ker. 392; *S. Co.* v. *Foster,* 5 Ga. 218; *Martin* v. *Marshall,* Hobart, 63; *Com.* v. *Davis,* 11 Pick. 432–438; *Com.* v. *Parker,* 2 id. 553; *Com.* v. *Phillips,* 16 id. 211; *Com.* v. *Holly,* 3 Gray, 458; *Greene* v. *Briggs,*

1 Curtis C. C. 350 ; *Murray* v. *L. Co.,* 18 How. [U. S.] 280 ; *Bank of Columbia* v. *Oakley,* 4 Wheat. 235 ; *Ex parte Ramshay,* L. R. [18 Q. B.] 187 ; *Downes* v. *G. J. R. Co.,* 3 H. L. 759.) There was no waiver by the attorney's appearance before Judge BRIGHAM. A person may be in the court room, and yet not in court ; and no jurisdiction as a court could be acquired by said justice by said attorney's presence there ; and a precautionary effort to protect and secure rights could not be tortured into acquiescence to illegal and arbitrary action by a judge. (*Webster* v. *Com.,* 5 Cush. 404 ; *Com.* v. *Andrews,* 3 Mass. 133 ; *Beaudry* v. *Mayor,* 11 Moore's P. C. 426 ; *Crepps* v. *Durden,* 1 Smith's L. C. 848 ; *Re Bishop Natal,* 3 Moore's P. C. [N. S.] 115 ; Broom's Maxims [4th Lond. ed.], 139.) It is essential to a conviction that it be founded upon a proceeding against a person. It is likewise essential to a conviction that it be a judicial act, and it is against all justice and decency that a man should act both as accuser and judge. (*Rex* v. *Lediard,* Sayers, 6 ; *Dynes* v. *Hoover,* 20 How. [U. S.] 82 ; *Ditcher* v. *Denison,* 11 Moore's P. C. 324 ; *Queen* v. *Smith,* L. R. [5 Q. B.] 621 ; *Gorham* v. *Luckett,* 6 B. Monr. 163–166 ; *Capel* v. *Childs,* 2 C. & J. 558 ; *Bonaker* v. *Evans,* L. R. [16 Q. B.] 171 ; *Ex parte Fischer,* 6 Leigh, 619 ; *Howard* v. *Gossett,* L. R. [10 Q. B.] 381 ; *Mitchell* v. *Harmony,* 13 How. [U. S.] 146 ; 1 Bishop's Civ. Pro. § 1001 ; Broom's Maxims [3d Lond. ed.], 10 ; *Devane* v. *Calching,* 2 How. [Miss.] 884 ; *Rex* v. *Holland,* 5 T. R. 607 ; *Queen* v. *S. Co.,* 10 H. L. Cas. 404 ; *Rex* v. *Wheatman,* Doug. 346 ; *Williams* v. *Bishop of Salisbury,* 2 Moore's P. C. [N. S.] 375 ; *Reg.* v. *Baines,* 2 Ld. Raym. 1273 ; *Queen* v. *Bethel,* 6 Mod. 17 ; *Kendall* v. *Stokes,* 12 Pet. 619.) A preliminary inquiry, inquest or investigation, in order to ascertain facts, is not a judicial inquiry or hearing or trial. Nor will such preliminary inquiry or investigation obviate the necessity of proceeding regularly in court in order to establish a valid judgment divesting a party of any freehold, office or other legal right ; for a party has a right to have a case against him decided

*secundum allegata et probata* in a suit or proceeding regularly constituted, which suit or proceeding is commenced only when the accused is served with a citation to appear at a certain time and place, before a competent court, to answer definite charges preferred against him. (*Ditcher* v. *Denison*, 11 Moore's P. C. 324; *Bowerbank* v. *Bishop of Jamaica*, 2 id. 470; *Bonaker* v. *Evans*, L. R. [16 Q. B.] 162; *Willis* v. *Sir G. Gipps*, 5 Moore's P. C. 379; *Emerson* v. *Justices, etc.*, 8 id. 157; *Rex* v. *Town of Liverpool*, 2 Burr, 734; *Rex* v. *Cambridge*, 2 Ld. Raym. 1348; 1 Strange, 557; *Harvey* v. *Tyler*, 2 Wall. 342; *Lessee of Walden* v. *Craig's Heirs*, 14 Pet. 154; *People ex rel.* v. *Barry*, 29 Pac. Rep. 904; *Perry* v. *State*, 2 Greene, 551.) The paper presented on motion was not the record of a judicial act or judgment of the Superior Court of Massachusetts entitled " to full faith and credit," for it has none of the elements and characteristics of a record, and it is manifest on its face there was no subject-matter or person before the court. (*Reg.* v. *Dayman*, 7 El. & B. 672–676; *Crepps* v. *Durden*, 1 Smith's L. C. 848; *Gorham* v. *Luckett*, 6 B. Monr. 163; *Queen* v. *Smith*, 5 Q. B. 621; 2 Salk. 511; Skinner's Rep. 522; *Burdett* v. *Abbott*, 14 East, 106; *Reg.* v. *Baines*, 2 Ld. Raym. 1273; Statute, 25 Edw. I, chap. 2; *Capel* v. *Child*, 2 C. & J. 577; *Goddard* v. *Coffin*, Davies C. C. 383; *State* v. *Bennett*, 4 D. & B. 43; 3 Black. Comm. §§ 395, 396; 1 Coke Inst. 39 A; *Smith* v. *Moore*, 3 How. [Miss.] 42; *Wright* v. *Delafield*, 25 N. Y. 268; *Regina* v. *Bailiffs of Ipswich*, 2 Salk. 434; *Deering* v. *Metcalf*, 74 N. Y. 501.) The paper styled a " record of disbarment," if it had been produced at trial, could in no way have been admitted to have impeached the plaintiff's testimony. And such testimony was in no way material, the attorney's reputation in New York, the state in which he lived and practiced, being alone material. (*Tompkins* v. *Wadley*, 3 N. Y. Supp. 424; *Sims* v. *Sims*, 75 N. Y. 466; *Greaton* v. *Smith*, 1 Daly, 387; *Blakeman* v. *Rose*, 18 Wend. 146; It was not that Judge BRIGHAM's act was in excess or beyond jurisdiction, but it was without the inception of jurisdiction.

No jurisdiction then and there existed. It was the exercise of arbitrary and usurped power by an individual, holding the office of a judge without any of the forms or safeguards or sanctities of law. (*Queen* v. *Bethel,* 6 Mod. 17; *Shriver's Lessees* v. *Linn,* 2 How. [U. S.] 59; *Mitchell* v. *Foster,* 4 P. & D. 154; 12 Ad. & El. 472; *Thomas* v. *Hudson,* 14 M. & W. 363; *Lange* v. *Benedict,* 73 N. Y. 12; *Honldon* v. *Smith,* L. R. [14 Q. B.] 841; *Calder* v. *Halkett,* 3 Moore's P. C. 28; *Gahan* v. *Lafitte,* Id. 382; *Hill* v. *Bigge,* Id. 465; *Miller* v. *Hope,* 2 Shaw's App. Cas. 125; *Ferguson* v. *Kinnonill,* 9 C. & F. 896; *Dicas* v. *Brougham,* 6 C. & P. 249; *Kining* v. *Buchanan,* 8 C. B. 271; *Watson* v. *Bodell,* 14 M. & W. 70; *Beaurain* v. *Scott,* 3 Camb. 388; *Ackerly* v. *Parkinson,* 3 M. & S. 411; *Garnett* v. *Ferrund,* 9 Dowl. & Ryl. 670; *Gossett* v. *Howard,* L. R. [10 Q. B.] 411; *Van Sandau* v. *Turner,* L. R. [6 Q. B.] 773; *Johnstone* v. *Sutton,* 1 T. R. 493; *Sutherland* v. *Murray,* Id. 538; *Welsh* v. *Marsh,* 8 East, 402; *Burdett* v. *Abbott,* 14 id. 1; *Mostyn* v. *Fabrigas,* 1 Cow. 161; *Bushell's Case,* 1 Mod. 119; *Hammond* v. *Howell,* 2 id. 219; *Miller* v. *Seare,* 2 W. Bl. 114; *Smith* v. *Bonchier,* 2 Stra. 993; *Groenveldt* v. *Burwell,* 1 Ld. Raym. 454; *Martin* v. *Marshall,* Hobart, 63; *Perkins* v. *Proctor,* 2 Wils. 386; *Floyd* v. *Barker,* 12 Coke Rep. 76 A; *Piper* v. *Pearson,* 2 Gray, 120; *Nixon* v. *Hill,* 2 Allen, 215; *Wise* v. *Withers,* 3 Cranch, 327; *Anderson* v. *Dunn,* 6 Wheat. 204; *Kendall* v. *Stokes,* 3 How. [U. S.] 789; *Mitchell* v. *Harmony,* 13 id. 144; *Dynes* v. *Hoover,* 20 id. 65; *Yates* v. *Lansing,* 5 Johns. 282; *Bigelow* v. *Stearns,* 19 id. 39; *Cunningham* v. *Bucklin,* 8 Cow. 178; *Horton* v. *Auchmoody,* 7 Md. 200; *Scovil* v. *Geddings,* 7 Ohio, 566; *Greene* v. *Munford,* 5 R. I. 472; *Miller* v. *Grice,* 2 Rich, 27; *Lining* v. *Bentham,* 2 Bay, 1; *Bevard* v. *Hoffman,* 18 Md. 479; *Revill* v. *Pettit,* 3 Met. [Ky.] 314; *McMahon* v. *Learned,* 6 H. L. Cas. 970; *Rogers* v. *Dutt,* 13 Moore's P. C. 209; *Beau* v. *Bloom,* 3 Wils. 456; *Carrington* v. *Taylor,* 11 East, 511; *Thompson* v. *Gibson,* 7 M. & W. 456; *Peter* v. *Kendall,* 6 B. & C. 793; *Townsend* v. *Blewitt,* 5 How. [Miss.] 503; *Wammack* v. *Halloway,* 2

Ala. 31; *Palmer* v. *Fisk*, 2 Curtis C. C. 14; *Bruce* v. *Fox*, 1 Dana, 450 ; *Glen* v. *Hodges*, 9 Johns. 67 ; *Lynch* v. *Knight*, 9 H. L. Cas. 597.)

Gray, J.   This action was brought to recover the sum of $23,000 ; as a balance claimed to be due to the plaintiff for professional services rendered to the defendant, in the capacity of his attorney at law.   The answer admitted the employment of the plaintiff ; but denied that his services were worth more than the sum of $2,000, which had been paid to him.   Upon the trial the nature of the services rendered was testified to. It appears that the plaintiff had subscribed the sum of $125,000 to the capital stock of the Perry Stove Company, a corporation organized in Albany, N. Y. and, in part payment of his subscription, had transferred to the company certain foundry property, at a valuation of $45,000, and had given to it his promissory note for $10,000, which was held by a bank under discount.   He was being pressed for the payment of the balance of his subscription and, becoming dissatisfied with the project, was desirous of being relieved of his agreement and of getting out of the matter entirely.   To accomplish his release, he employed the plaintiff as his attorney and, negotiations for an amicable settlement failing, the latter commenced an action, in equity, for his client, to set aside the subscription and to compel a re-conveyance of the foundry property and the return of the note.   The complaint was based upon charges of fraud and deceit in procuring the defendant to join in the corporate enterprise.   Answers were made to the complaint, putting its allegations in issue ; but, before the cause came on for trial, a compromise was effected between the parties.   It is fair to infer from the evidence that it was made because of the delay which would ensue in organization and of the cloud which would or might be cast over the enterprise.   The interests of the company were deemed better subserved by a settlement, than by a protracted litigation.   As the result of the compromise, this defendant received back from the company his foundry property and his note ; he sub-

scribed the sum of $5,000 to the same corporate enterprise, but with a capitalization of $300,000, instead of $500,000; and the equity action he had instituted and the action at law against him to compel the payment of the balance of his subscription were discontinued. The plaintiff's own evidence as to the promise of the defendant to pay him $25,000, in the event of a successful result, was flatly contradicted by the defendant and the evidence of lawyers examined by him upon the question of the value of the services, he had testified to performing for the defendant, was as flatly contradicted by that of lawyers examined in behalf of the defendant. As to the parties litigant, the question of an agreement to pay the sum of $25,000, or any fixed sum, depended upon the credibility to be attached to their several statements; while the question of the value of the plaintiff's services, under the circumstances detailed, was apparently not much helped in its solution by the irreconcilable evidence of the expert witnesses. The jury, after being charged by the trial judge, rendered a verdict of $10,000 for the plaintiff; being less than half of the plaintiff's claim. Whatever our opinion might still be as to the amount awarded by the jury, upon the evidence before them, we are concluded from any expression by their verdict and, if there was no error committed upon the trial, the judgment must stand.

At the conclusion of the charge, the defendant's counsel excepted " to that part of the charge in which the court charged that the main element of value is result.' That exception is the sole error urged by the appellant as ground for reversal of the judgment below. The precise language of the trial judge, to which the exception related, was this: " But the main element after all in determining the value of a lawyer's services is the result of his labor." If this statement had stood alone and without anything which could be regarded as qualifying it, it would have been distinctly erroneous and misleading as to the law; and the defendant would have been entitled to a reversal of the judgment. The result of a lawyer's services is an element in determining their value

and it is, unquestionably, a very important one. Had the learned trial judge said that the result was one of the main elements, he would have been right. There are several other elements, which must be equally considered in determining the amount of an attorney's compensation, and unless the jury were instructed as to the importance of their consideration ; or if they were so instructed, concerning the importance of the result attained for the client, as to mislead them into the belief that they were at liberty to base their estimate entirely, or principally, upon that result, there would have been distinct error. The general rule is that an attorney, in the absence of an agreement, deserves compensation according to the reasonable worth of his services. Of that the jury are the sole judges and, to arrive at their value, they may consider the nature of the services rendered, the standing of the attorney in his profession for learning, skill and proficiency, the amount involved and the importance to his client of the result. The reason why the result is one of the important factors in the consideration must be obvious. It not only is some evidence of the usefulness of the services ; but, for its effects upon the situation of the client, relatively to what it had been, it must be conceded a degree of influence, in fixing the amount of the attorney's compensation proportioned to the nature and incidents of the result, in connection with the other considerations adverted to. The trial judge, in the previous portion of his charge, said to the jury that "several circumstances must enter into the computation" in estimating value and he proceeded to state them ; reviewing, in connection with their statement, the evidence in the case. He had said that the professional reputation of the lawyer for ability and integrity ; the difficulty and importance of the case ; the amount of work and labor performed ; the amount involved and the pecuniary ability of the client were to be considered and it was after a rather general discussion of these considerations, that he stated that "the main element after all in determining the value of a lawyer's services is the result." Despite what had been said by the judge, I should still hesitate to say that

the jury may not have been seriously misled by the undue emphasis laid upon the result, as a factor in the determination of the question of value. If there was nothing more we might very reasonably and justly hesitate to hold in this case, where the evidence was sharply conflicting upon the value of the plaintiff's services, that the jury were clearly instructed how to consider that evidence and by what legal rules they were to be guided in reaching a verdict upon the issues. But, in our judgment, the possibility of a belief by the jury that the judge was intending to lay down a rule of law, by the statement in question, was removed by the remark with which he followed up his statement. He immediately added that " a charge must be adjusted to the benefit, in a measure at all events. So you inquire what was the benefit to the defendant, rendered by this plaintiff. Undoubtedly a lawyer — and every lawyer is governed by that consideration — will not charge a client as much if the client be unsuccessful.   *   *   *   You must look to the benefit." And the judge showed that the result was all that this defendant had hoped for. Thus, the remarks which followed upon the remark, which was excepted to, so qualified it as to correct its generality of expression and showed that what was meant was that the lawyer's charge must be adjusted in a measure to the benefit resulting to his client. The jury could not have failed then to understand that while the result was an element of considerable importance to be considered, it was only one of several elements which had been discussed by the judge. We must read these remarks as they were heard; that is, consecutively, and as the summing up by the judge of the various considerations which the jury were to entertain. We do not think that it would be just to order a reversal of this judgment upon an exception taken to the remark of the trial judge; which, however erroneous if standing by itself, was so coupled with other observations, as to accomplish a modification of its apparent emphasis and to give a more correct definition of the true relation which the result of services rendered bears to the consideration of the question of their actual value. The defendant, by an appro-

priate request to charge, might very easily have covered the
point, if he thought it left in doubt.   As the case stands, we
cannot say that there was such error in the charge as to justify
us in ordering a new trial of the issues.

The other appeal by this defendant concerns the denial of
his motion for a new trial.   After the recovery by the plaintiff
of a judgment against the defendant, the latter's attorney,
upon his affidavit and upon the proceedings had, moved the
court for an order granting a new trial.   His affidavit stated
that, prior to the trial, he had heard rumors that the plaintiff
had been disbarred at some time in Boston, Massachusetts;
and that, at the time of the trial, he was unable to procure any
evidence of the fact.   It then gave, from the testimony of
the plaintiff upon the trial, the following extract from his
cross-examination :

" Q.  Were you a member of the bar in Boston ?

" A.  I was.

" Q.  Are you now ?

" A. I am.

" Q.  Never disbarred in Boston ?

" A.  Never.   I brought a certificate when I left Boston —
from the clerk — from the chief justice, which I have in my
hat.   I was a member of all the courts."

The affiant then stated that he had procured " the record of
disbarment of plaintiff ; " which was annexed to his affidavit.
The record referred to contained an order of the Superior
Court of Massachusetts, held within and for the county of
Suffolk, for the transaction of criminal business, on the first
Monday of October, 1864, the Hon. L. F. BRIGHAM, a justice
of said court, presiding, and entitled "in the matter of Sam-
uel H. Randall, an attorney at law etc."   After a recital of
certain facts, which were found by the court to constitute a
" violation of his oath of office as an attorney at law " and to
render him " guilty of malpractice and gross misconduct in
his office," it was ordered that " for these causes he is removed
from the office of an attorney at law within this common-
wealth."   In opposition to the motion, Randall submitted an

affidavit; in which he swore that the portion of his testimony referred to was true and that he was never disbarred by the Superior Court, or by any other court. He proceeds in the affidavit with statements regarding the validity of the proceedings in the Superior Court, to the effect that no charges had been filed; that the court had no jurisdiction and that he had never been validly removed, as proved by the annexed certificates of the clerks of the Superior Court and of the Supreme Judicial Court of Massachusetts. The certificate of the clerk of the Superior Court showed that there were no charges on file against Randall and that upon its docket was simply an entry, made in January, 1865, of the order of October, 1864, made by Judge BRIGHAM. The certificate of the clerk of the Supreme Court, dated in April, 1866, stated the date of Randall's admission to practice; that there was no evidence of his having been removed from his office of attorney and that his name still appeared upon the records as such. Upon the facts shown, it was Randall's claim that, never having been tried upon any charges, as he was entitled to by the law, the order of the Superior Court was ineffectual and without jurisdiction in the judge to make; that it was neither a court order, nor a record of disbarment and that it affirmatively appeared, from the clerk's certificate produced, that his name was still upon the roll of attorneys and that he had not been disbarred. For this defendant, Packard, it was claimed that the record showed a disbarment, and, in support of the argument, the case of *Randall* v. *Brigham* (7th Wallace U. S. Rep. 523) was cited. That was an action brought by Randall against Judge BRIGHAM, of the Superior Court of Massachusetts, to recover damages for his alleged wrongful acts, and the ground relied upon appears to have been, in substance, that the judge's acts were not judicial, for want of jurisdiction, and, hence, he could claim no immunity from liability because of his judicial office. The case came up to the United States Supreme Court, in 1868, and it was there held that the Superior Court of Massachusetts was a court of general jurisdiction, having authority to admit

and to remove attorneys; that the order of Judge BRIGHAM was an order of the court; that it was the result of an inquiry into his conduct before that court upon notice and that the notice through a letter of the judge to Randall to appear, however informal, was sufficient to set in motion the authority of the court and to call upon Randall to explain the charge against him. The Circuit Court below had directed a verdict for Judge BRIGHAM, the defendant, and the Supreme Court found no error in that ruling. That decision must be regarded as establishing, only, that the proceeding instituted in the Superior Court by Judge BRIGHAM was valid in all respects, so far as it operated upon Randall as a trial and a judgment. The question, then, which was presented to the court below, upon the hearing of the defendant's motion, was whether the plaintiff Randall, in denying that he had been disbarred, had sworn falsely upon the trial and whether, if that was the fact, there should be a new trial ordered. Of course, there was no ground of any newly discovered evidence; for the affidavit of the defendant's attorney shows that he had heard, before the trial, of rumors that defendant had been disbarred. We may observe, in passing, that, if the defendant intended to rely for defeating the plaintiff's claim upon 'evidence of his having been disbarred, he should have had his proofs in readiness. It appears that he was not forced to proceed with the trial and that he refused to consent to any delay. However, as the question came before the court below, it was one of fact, to be determined upon the proofs adduced. There had been no conviction, establishing conclusively the commission of perjury by the plaintiff, and it was for the court to consider and to say, upon the proofs on either side, whether the plaintiff had sworn falsely upon some material point. It decided adversely to the defendant's application and refused a new trial. In arriving at that decision, it was not without the support of sufficient evidence and, as the General Term of the court have affirmed the decision of the Special Term, we think the matter ended there and ceased to be further reviewable in this court. It was not

only a matter calling for a consideration by the court of evidence both ways; but it was an application addressed to its discretion.

We fully recognize the fact that the Superior Court record established that plaintiff had been found guilty of malpractice and of gross misconduct in his professional capacity, while in practice as an attorney at law, in Massachusetts; but, upon all the evidence, it was open to question whether that order had ever become effective as a removal of Randall from office. Upon that point, opinions might differ. That the plaintiff evaded giving exact information in answer to counsel's question is very true; but, under the peculiar circumstances, he was entitled to give his answer in accordance with his opinion as to the legal result of the proceedings taken for his disbarment. Further questioning by defendant's counsel might, possibly, have elicited from Randall the facts, as they actually occurred in Boston. While he could not truthfully have testified that no judgment or order for his removal from his office had ever been made and entered; yet, inasmuch as it seemed to be a debatable question, admitting of opposing inferences, whether he had ever been actually disbarred, in the legal sense of the expression, in stating that he had not been, it cannot be said, as matter of law, that he swore falsely. Our conclusion upon this appeal, therefore, is that the decision of the court below, upon this defendant's application for a new trial, is not reviewable here.

The judgment and the order, from which these two appeals have been taken, should be affirmed, with costs.

All concur, except FINCH, J., dissenting, and PECKHAM, J., not voting.

Judgment accordingly.