.TRUMAN K. FULLER, Respondent, *v.* MARGARET TOLMAN, Appellant.

*Services of an attorney — proof of their value — elements of value — hypothetical questions — order of proof.*

Where an attorney sues to recover for his services it is sufficient for him to prove the proceedings in the cause, the time occupied in the performance of any part of such services by which their value was enhanced, and the value of the whole or the value in detail, as he may elect.

The referee, in reaching a conclusion as to the value of such services, may consider their nature, the standing of the attorney in his profession, the amount involved, the importance of the case to the client and his pecuniary ability.

Hypothetical questions as to the value of such services may be put to attorneys, but they must be based upon the proofs in the case and must not go outside of the facts as to which some evidence has been given, and which could be assumed possibly to be truth.

Hypothetical questions may be put to an attorney, relative to the value of legal services, although they involve facts not proved, where, by arrangement of counsel, these facts were to be, and subsequently were, supplied.

APPEAL by the defendant, Margaret Tolman, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 19th day of December, 1894, upon the report of a referee.

This action was brought to recover the value of the plaintiff's services as attorney and counselor rendered to the defendant. Henry B. Tolman, the defendant's husband, died on the 12th of December, 1889, leaving a last will and testament whereby he devised and bequeathed all his property, both real and personal, to her and nominated her as executrix of the will. At the time of his death he was the owner of real estate consisting of a farm containing about 200 acres situated in the town of Lafayette, upon which he had spent the most of his life, and about $4\frac{16}{100}$ acres of land in the city of Syracuse.

The referee found that the fair market value of the real estate of such testator at the time of his decease was $13,500; and he also found that there was about $200 worth of personal property and debts amounting to about $2,500 against the estate. He also found that the plaintiff is an attorney and counselor, and has been engaged in the practice of his profession for twenty-five years in the county of Onondaga, and that on the 16th of December, 1889, a petition was presented in behalf of the defendant to the surrogate of Onondaga county for the probate of her husband's will; that through James W. Tolman, a brother of the deceased, she employed the plaintiff to attend to the procuring of the probate of the will; that on the return day of the citation a son of the deceased appeared with counsel and filed objections to the probate of the will in substance as follows:

1. That the paper presented was not the will of the deceased, and that its execution was not his free and voluntary act.

2. That the paper purporting to be such will was procured to be executed through undue influence.

3. That said paper was not subscribed, published and executed according to the statute.

4. That the paper was invalid as a will.

5. That the execution of said paper was procured by fraud, deceit and undue influence on the part of the devisee named in the will.

Evidence was taken under the petition and objections and the will was admitted to probate by a decree of the surrogate.

The referee found that " the plaintiff was necessarily in the Surrogate's Court during the pendency of said proceedings engaged in the case on seven different days, but all of the time of those days was not actually spent in court on said matter." The referee also found that, " before the said will had been admitted to probate and about April 1, 1890, the said contestant commenced an action in the Supreme Court for the purpose of determining the validity of said will, alleging substantially the same grounds as were contained in the objections filed in Surrogate's Court, making the said widow and the next of kin parties defendant."

The appellant here retained the plaintiff here to defend the action, and he drew and served her answer to the complaint. The issues involved in the action were settled at a Special Term, held September 8, 1890, and the cause was put upon the Circuit calendar for October 6, 1890, and when it was reached it was moved for trial; " no one appearing for plaintiff therein, the complaint was dismissed and a judgment of dismissal and for costs were entered."

The referee found, viz.: " The plaintiff herein prepared comprehensive and exhaustive briefs upon the questions involved in both Surrogate's Court and the Supreme Court, and made careful preparation for trial in each court, and was ready for trial when the case was reached.

" The plaintiff devoted ten days in court and forty-five days out of court to the said causes. The said several days in court were not wholly given to that work, but were set apart for that purpose by the plaintiff and some part of each day given to it.

" The result of the litigation was favorable to the devisee in the will, this defendant, and the value of plaintiff's services in the said matters alleged in the complaint is $1,250.00."

He also found that a bill was rendered by the plaintiff to the defendant, about the 16th of December, 1890, and that about the

2d of April, 1891, the plaintiff received through the mail a check of James W. Tolman for $300 " for Margaret Tolman." The check was acknowledged the same day, and a statement was made by the plaintiff " that he would not accept $300 for his bill." In April, 1891, the plaintiff sent another bill to the defendant, which is set out in the complaint, amounting to $1,900, giving credit for $300, leaving a balance of $1,600. No response was made to that bill, and this action was brought on August 5, 1892. The referee stated, as a conclusion of law, that the plaintiff is entitled to recover " the value of his services rendered, to wit, $1,250, less the sum of $300 paid on the account, leaving the sum of nine hundred and fifty dollars ($950), with interest thereon from April 12, 1891 ;" and he stated the interest to be $209.50, and awarded a judgment for $1,159.50, with costs. Exceptions to the referee's report were filed, and this appeal was taken from the judgment entered thereon.

*Wilson, Kellogg & Wells,* for the appellant.

*Fuller & Glen,* for the respondent.

HARDIN, P. J. :

Upon looking into the evidence we are satisfied that it sustains the finding of fact made by the referee to the effect that the plaintiff devoted ten days in court and forty-five days out of court to the service of the defendant, and that there is evidence fully sustaining the finding of the referee that the value of the services rendered by the plaintiff for the defendant was $1,250. Recognizing that this court has the power to review the evidence and to interfere with a finding of fact made by a referee, as stated in *Farren* v. *McDonnell* (74 Hun, 176) and *Baird* v. *The Mayor* (96 N. Y. 576), we have carefully considered the evidence in the light of those authorities and have reached the conclusion that we are not at liberty to say that the findings are against the weight of evidence, or that the proofs given at the trial clearly preponderated in favor of a different result from that stated by the referee; therefore, we may not disturb his findings of fact; on the contrary, we must accept the same as a fair solution of the conflicts found in the evidence which was delivered before him. (*Van Epps* v. *Harnes,* 88 Hun, 229.) The witnesses that were called to speak of the value of the real estate

left by the deceased differ very widely in their estimates of its value, and it seems that the referee has accepted the medium valuations given by the witnesses, thus indicating that he did not believe that the extreme value put upon it by some of the witnesses for the plaintiff, nor the meager value put upon it by some of the witnesses for the defendant was the correct one.

In *Randall* v. *Packard* (142 N. Y. 47) it was stated that several circumstances must enter into the computation or estimate of the value of the services of an attorney and counsel, and that among them were the amount involved, the pecuniary ability of the client, and the fact that an attorney " deserves compensation according to the reasonable worth of his services." And it was added : " Of that, the jury are the sole judges, and, to arrive at their value, they may consider the nature of the services rendered, the standing of the attorney in his profession for learning, skill and proficiency, the amount involved and the importance to his client of the result." And in the course of the opinion from which we have already quoted it was said : " Whatever our opinion might still be as to the amount awarded by the jury, upon the evidence before them, we are concluded from any expression by their verdict, and, if there was no error committed upon the trial, the judgment must stand." In the case in hand we are constrained to say that whatever our opinion might be upon reading all the evidence found in the appeal book as to the value of the services rendered by the plaintiff, and the amount of compensation which he justly should receive therefor, the action of the referee forecloses our interference as to the amount of the award made to the plaintiff. There was quite an extensive conflict in the evidence, and it was eminently within the province of the referee to determine what credibility should be given to each witness speaking upon the subjects embraced in the trial, and to award such credibility to one set of witnesses or another set of witnesses ; and having faithfully, as we assume, performed the functions of a referee, we are called upon to accept his conclusions upon the whole body of the evidence presented to him relating to the question of the value of the services rendered by the respondent for the appellant.

In *Garfield* v. *Kirk* (65 Barb. 464) a discussion took place over the measure of the value of an attorney's services, and, in speaking of

the proof to be given thereof, MULLIN, P. J., said : " It is enough for him to prove, in general terms, the proceedings in the cause, the time occupied in the performance of any part of the services by which their value was enhanced, and the value of the whole, or in detail, as he may elect." Apparently that rule was fairly observed in the trial before the learned referee.

(2) It is claimed in behalf of the appellant that an error was committed in allowing witnesses to answer hypothetical questions which were propounded to them. It seems that after the plaintiff had given some evidence as to the general features of the case, and as to the general circumstances attending the services which he had rendered, and after he had stated as a witness that the services which he had rendered " were actually worth $2,500, but that is more than I (he) charged them in my (his) bill. They were easily worth $1,900.50. That is the amount of the bill I presented," and after he had caused to be produced certain letters which had passed between him and the defendant, his direct examination was suspended " to allow hypothetical question to be propounded to expert witnesses." Thereupon, Mr. Andrews was called as a witness in behalf of the plaintiff, and stated that he was acquainted with the value of legal services, and then there was propounded to him in behalf of the plaintiff a hypothetical question, which had been prepared with considerable care, and evidently was intended to embrace the facts which, while not yet fully disclosed, were expected to be disclosed by the evidence to be given by the plaintiff before resting. The hypothetical question covers over ten pages of the printed appeal book, and while it was being propounded to the witness the plaintiff's counsel, apparently, handed a brief to the witness, accompanied with the statement that " The brief to which I have alluded was much more voluminous than the brief which I hand to the witness."

At the close of the hypothetical question the examining counsel observed : "Assuming the above facts to be true, what, Mr. Andrews, do you say the services of the plaintiff were worth, in the entire proceeding and litigation ? " Thereupon the defendant interposed numerous objections to the question, and in response thereto the counsel for the plaintiff alluded to an agreement apparently that had been made between the counsel in respect to the time in which the hypo-

thetical question should be propounded. In response thereto the appellant's counsel observed : " I make this for the purpose of getting it upon the record," apparently referring to the objection that he had stated. In response thereto the referee observed : " What the counsel means, and as I understand, it was arranged before dinner that Mr. Fuller's testimony would be suspended to allow the hypothetical question to be propounded to the expert witnesses, and that their cross-examination be postponed until counsel has an opportunity to cross-examine Mr. Fuller." Some further remark was made by the counsel for the defendant, and then the referee observed : " That is the arrangement between counsel. Of course, the referee is satisfied," and apparently ruled that the question might be answered, and the defendant took an exception.

Thereupon the question was, to some extent, modified by the counsel for the plaintiff, particularly as to the number of acres of land, and the assumption was made that the property was worth from twenty to twenty-seven thousand ($20,000 to $27,000) dollars. Then the witness was asked, " What do you say  *  *  *  for such services ? " The answer given by Mr. Andrews was as follows : " I should think $2,500 would be a fair compensation." He was then extensively cross-examined, and thereafter the plaintiff returned to the stand and gave further evidence in detail, and was cross-examined at great length, and thereafter Mr. Hunt was called, and the hypothetical question was repeated to him, and, against an objection thereto and an exception taken by the defendant, the witness stated in answer to the question that in his opinion the services were worth $2,500. He was extensively examined and cross-examined, and thereupon the plaintiff was recalled, and gave further evidence in respect to the circumstances attending the rendition of the services in question, and was further cross-examined with great particularity. Subsequently Theodore E. Hancock was called as a witness to testify as to the value of the plaintiff's services, and a hypothetical question, similar to the one propounded to Mr. Andrews was asked of the witness, and no objection seems to have been taken to the question as propounded to him. His answer was, I should say that the value of the plaintiff's services for the entire litigation was $2,000. Subsequently Mr. Hoyt was called as an expert, and after the hypothetical question was put to him, it was modified in some slight respects, and it seems that the brief that

had been prepared was put into the hands of the witness. The counsel for the defendant objected to the question in general terms, but did not specify in any particular respect wherein the question was erroneous. The objections made by the defendant were overruled and an exception was taken, and the witness answered : " Assuming the facts stated in that question to be true, I should say the services were worth $2,500." Subsequently Mr. Ceylon H. Lewis was examined, and answered the hypothetical question against the defendant's objection and exception, and estimated the value of the services at $2,300. Mr. Louis Marshall was called, and the hypothetical question was read to him, and his estimate of the value of the services was $2,000, and thereafter Mr. Merton M. Waters, who had acted as counsel in the Surrogate's Court for the appellant, was called, and the hypothetical question was propounded to him, and after objections thereto were overruled and an exception taken, he said : " Assuming all the facts detailed in the question my judgment is that the charges of the attorney for those services, exclusive of the counsel fee, should be worth $1,600, and upon the subject of counsel fee it seems to me that it is a case — the question assumes a case — which would entitle the attorney to a counsel fee of probably $500 ; all this is assuming that the facts are as I have stated. I will base my opinion upon the facts stated in the question."

Giving effect to the agreement that was made by the counsel in the early stage of the trial, that the hypothetical question might be propounded before all the evidence was given which related to the details embraced in the question, we are of the opinion that no error was committed in allowing the witnesses to answer the hypothetical question. Evidently the counsel attempted to keep within the rule relating to hypothetical questions, to-wit, that such questions must be based upon the proofs in the case, and must not go outside of the facts as to which some evidence has been given, and which could be assumed as a possible truth. (*The People* v. *Smiler*, 125 N. Y. 717; *Carpenter* v. *Blake*, 2 Lans. 206 ; *People* v. *Harris*, 136 N. Y. 424; *Bramble* v. *Hunt*, 68 Hun, 204 ; *Matter of Mason*, 60 id. 46.)

(3) It is claimed an error was committed in allowing this question propounded to the plaintiff, viz.: " Q. What did you learn to· be its (the real estate devised to the defendant) value ?" In answer to the question the witness stated that he learned from the

party who had charge of the matters for the defendant, and who came to him several times in relation to her business, and who was subsequently called and testified as to the bill, of his interviews with the plaintiff and as to the litigation and the features thereof generally, that the value of such real estate was $27,000. A motion was made to strike out the evidence, and thereupon the counsel for the plaintiff stated : " I am willing, and ask that it be stricken out. The valuation that was given by James Tolman after the services were completed." In response to that motion the referee said, " Granted." We think, under the circumstances, the exception is unavailing to the appellant.

(4) The referee seems to have been liberal in allowing cross-examination of the plaintiff, and we think he had the right to exercise some discretion, and that he did not commit any error in the restriction which he placed upon the cross-examination.

Some other exceptions were taken during the trial and are alluded to in the appellant's points. They have received attention, and it is not found that any of them present such an error as warrants us in interfering with the report of the referee. We think his conclusions upon the whole evidence, to wit, that the services of the plaintiff were worth $1,250, and that he has received $300 in payment thereon, and that he is entitled to recover the balance, with interest from the time stated in the report, should be sustained.

MERWIN and PARKER, JJ., concurred.

Judgment affirmed, with costs.