ELIZABETH BIGELOW BALLARD, EXECUTRIX
*vs.*
ESTATE OF EDWARD LATHROP BALLARD
(Appeal from Probate)

Superior Court          Fairfield County          File No. 69556

MEMORANDUM FILED AUGUST 29, 1945

*Harold L. Knapp,* of Greenwich, for the plaintiff.

*Ralph E. Cramp,* as Guardian.

*Pullman & Comley,* of Bridgeport, for R. E. Cramp, Guardian, ad litem.

CORNELL, J.   The plaintiff, as sole surviving executrix on the will of her late deceased husband, Edward Lathrop Ballard, filed her final account in the Probate Court for the District of Ridgefield.   Among the items for which allowance was sought therein was one in the sum of $131,408.65, representing fees and disbursements of counsel paid by her for legal services in connection with the administration of the estate, inclusive of certain questions of taxation and litigation incident thereto. The court of probate corrected the account by disallowing the named sum and allowing in lieu thereof the amount of $75,000, and by an order and decree made on September 15, 1944, allowed the account as so corrected and adjusted.   Claiming to be aggrieved by this action plaintiff instituted an appeal to this court.

There is and can be no question that the particular legal services rendered to the executrix were necessary in the proper administration and conservation of the assets of the estate, nor that, under such circumstances, the executrix is entitled to allowance in her final account for any reasonable expenditures made by her for that purpose.   The only question involved in the appeal, therefore, is whether the sum for which she seeks allowance is the equivalent of the fair value of such services and if it is in excess of same, then what amount conforms thereto.

Before discussing that matter it is necessary to take note of another which affects the power of the court to pass judgment in this proceeding.   The appellee again presses upon the court's attention the claim underlying a motion to erase made at the

outset of the trial. This is that the plaintiff in her capacity as executrix is not aggrieved by the action of the court of probate, but, if at all, personally, and that, in consequence, the appeal should have been taken by her in her individual capacity. This misconceives the relation of an executor or administrator toward the estate which he administers and the procedure that has developed over the years consistently therewith. Since, however, the contention is seriously renewed, the following brief comments are called for, in the hope that the estate may be spared further litigation by reason of any misapprehension on that account. It is true that expenses incurred by the administrator on an estate or the executor named in a will in administering his decedent's estate are his personal obligations so far as the person who furnishes them is concerned. *Chambers vs. Robbins,* 28 Conn. 544, 550; *Dillaby vs. Wilcox,* 60 *id.* 71, 75, 25 Am. St. Rep. 299, 13 L.R.A. 643. In this State if he fails to pay for them such creditors are permitted to institute suit against him in his representative capacity under the provisions of section 5640 of the General Statutes, Revision of 1930. If in such an action, the court finds that the claim is a "just one and one which ought to be equitably paid out of such estate, judgment may be rendered in favor of such claimant, to be paid wholly out of the estate. . . ." *Hewitt vs. Beattie,* 106 Conn. 602, 612, 613; *Beattie vs. Hewitt,* 114 *id.* 689, 692; *American Surety Co. of New York vs. McMullen,* 129 *id.* 575, 582. It is preferable, however, that he personally pay creditors who hold claims against him for expenses as executor or administrator rather than to compel them to resort to the courts to collect what may then be owed them. *Beattie vs. Hewitt, supra,* p. 692. The foregoing, of course, has reference to the means at the disposal of the creditor to obtain payment of an indebtedness owing to the personal representative to him. An executor or administrator, however, has but one means of being reimbursed for expenditures made out of his personal funds for services to aid him in the performance of his official duties. That is by exhibiting and seeking allowance for them in his final account. In so doing, his status is not that of a creditor of the estate, but of one seeking indemnity which, in turn will be extended him only in the proper exercise of the discretion of the court of probate. *Bohun vs. Kinasz,* 124 Conn. 543, 548. The account in which the personal representative seeks allowance for his expenditures is not between him, individually, and the estate, but between him in his representative capacity and

the estate, and if reimbursement be denied him it is refused to him in such representative capacity and in that status and out of such relationship toward the estate, and not personally, he is pecuniarily aggrieved and thus entitled to appeal. The case of *Ekdahl vs. Wessman,* 127 Conn 141, 129 A.L.R. 920, upon which appellee principally relies, is not in point and requires no discussion. The contention made that the appeal taken by plaintiff as sole surviving executrix is subject to dismissal or erasure because in that status it does not appear that she is pecuniarily aggrieved is without basis in the law of this State.

The item of $131,408.65 in the account represented the total of sums paid by the executrix to the law firm of Conklin & Bentley of New York City, for services in connection with the administration of the estate and litigation concerning estate taxes. This included the successful resistance of the conten-tion of the New York Department of Taxation and Finance that the deceased, when he died, was a resident of the State of New York within the meaning of the pertinent statute and that his estate was hence subject to taxation in that State; the ad-justment of the Federal inheritance tax and that of the succes-sion tax due the State of Connecticut where Mr. Ballard was found to be domiciled at the time of his death; and the success-ful defense of an action of foreclosure accompanied with a claim for a personal judgment against the estate and the deceased's wife in the sum of $80,000.

The other part of the legal services was necessitated by the demand of the United States Commissioner of Internal Revenue for a deficiency Federal inheritance tax in the sum of $649,-615.35. The estate tax return filed by the executors on Octo-ber 26, 1938, showed a gross estate of $1,935,704.50 on the basis of which the computed tax was in total $506,784.01, of which $399,853.11 was paid to the United States Collector of Internal Revenue in Connecticut and $99,596.35, to the Con-necticut State Tax Commissioner, the difference of $7,334.25 being a credit for a gift tax. When Mr. Ballard died he owned 33,157 shares of stock in Merchants Fire Assurance Corporation which, valued in the return at $36 per share, totalled $1,193,652. In the month of December, 1937, on the last day of which he died, he made gifts to divers persons aggregating 3,600 shares of the stock of that corporation. Over the years preceding his demise, he had created a number of trusts for the benefit of his wife, children and other next of

kin or employees. The internal revenue agent, on June 9, 1939, claimed that the gift transfers of stock mentioned as, also, the corpus of three of such trusts should be included in the gross estate and were subject to taxation under the provisions of section 302 (c) and (d) of the Revenue Act of 1926—the gifts mentioned at a total of $140,400 and the principals of the trusts (the so-called "Ross", "Falcon", "Crehore", and "Children's") at a total of $1,183,703. In addition to increasing the value of the 33,157 shares of Merchants Fire Assurance Corporation stock that the deceased owned when he died, by the sum of $99,471, together with divers other smaller items, the internal revenue agent in charge computed the gross estate to be $3,371,305.31 as compared with the sum of $1,935,704.50 as shown in the executors' return. On this basis the tax was determined to be $1,049,-468.76 with a deficiency of $649,615.33. Counsel for the executors duly protested and a conference was had on December 14, 1939, at which a compromise was reached between them and the head of the New England Division, Technical Staff, whereby it was agreed that the executors would pay an additional tax of $64,174.01 which would be received in full settlement of all taxes due from the estate. This adjustment, which was a very advantageous one from the standpoint of the estate was never effectuated because before it was consummated, the Supreme Court of the United States on January 29, 1940, announced its decision in the case of *Helvering vs. Hallock*, 309 U.S. 106, 60 S. Ct. 444, 84 L. ed. 604. This introduced new and, to the profession generally, novel principles into the subject of taxability of certain interests in *inter vivos* trusts. It held the remainder taxable as part of the settlor's estate under §302 (c) of the Revenue Act of 1926, where a trust provided that the income from the corpus should be paid to the settlor's wife during her lifetime, that upon the settlor's death, if his wife survived him, the trust fund should go to her or other named beneficiaries, but that upon her death, if he survived, the property should revert to the settlor. It was also determined that where a fund was established in trust to pay the income to the settlor's wife during her lifetime and to the settlor should he survive her, and upon the death of the survivor, if the trust had not been modified or revoked, to pay the principal to the settlor's estate, there being an additional provision giving to the settlor and his wife jointly during their lives and to either of them after the death of the other, power

to modify, alter or revoke the trust (even though such power was not exercised), that the value of the interest which the settlor had reserved to himself should be included in the gross estate under said §302(c). On February 9, 1940, the head of the New England Division, Technical Staff, advised the executors' counsel that in the light of these holdings the taxability "of the trust created by the decedent in the instant case ....known as the 'Children's Trust' in which by later amendment, the decedent reserved the right to amend, modify or revoke in event of the prior decease of his wife who had been granted this right in the instrument dated January 31, 1924" would be affected. The adjustment agreed to on December 14, 1939, was repudiated by the Department, and its position in that regard adhered to following a hearing before the Technical Staff early in March, 1940, at which time counsel for the executors filed a brief in which they attempted to convince that body that the principles announced in *Helvering vs. Hallock, supra,* did not apply to the "Children's Trust." The estate's position, however, was made more difficult because in the meantime (on February 26, 1940) *Helvering vs. Clifford,* 309 U.S. 331, 60 S. Ct. 554, 84 L. ed. 788, had been decided. This, evincing the same trend as was evident in *Helvering vs. Hallock, supra,* laid stress upon the factor of family solidarity as an important element in the determination of taxability in cases presenting the same or analogous questions as were involved in *Helvering vs. Hallock, supra.*

On August 2, 1940, the acting internal revenue agent in charge, at New Haven, Connecticut, advised the executors that "the determination of the estate tax liability disclosed a deficiency of $447,707.55" as shown by certain schedules attached to a written notice to that effect. Within the 90-day period allotted (on September 26, 1940) counsel for the executors filed a petition to the United States Board (now the Court) of Tax Appeals seeking a review of the determinations made by the Technical Staff. Prior to the hearing before the Board of Tax Appeals, counsel for the estate at a conference with the Commissioner's Attorney at Boston effected a compromise of the issues other than those involving the "Children's" and the "Crehore" trusts, the Government relinquishing its claim that such transfers, inclusive of the gifts of Merchants Fire Assurance Corporation stock made by the decedent in December, 1937, and immediately before his death, to the total of 3,600 shares, were made in contemplation of his approaching death,

for the payment of $38,696.65. This left for decision the question whether the "Children's" and the "Crehore" trusts were taxable as part of the deceased's estate because they were intended to take effect in possession and enjoyment at or after death on the theory of the opinions in the cases of *Helvering vs. Hallock* and *Helvering vs. Clifford, supra,* and some others showing adherence to the principles announced in these. Following trial before the United States Board of Tax Appeals of both issues of fact and law, that body handed down its decision on October 1, 1942, in favor of the estate as concerns the "Children's" trust and for the Government as respects the "Crehore", trust. As a result judgment of no deficiency was entered on December 10, 1942. From this, the United States Commissioner of Internal Revenue appealed to the United States Circuit Court of Appeals (2nd District) where, after the usual proceedings the judgment of the Board of Tax Appeals was affirmed. No appeal was taken by the Commissioner to the United States Supreme Court. As a result of this termination of the litigation, the estate was saved from the threat of being compelled to pay a deficiency tax which, with interest, would have totalled $652,532.52. The consequences to the estate and, particularly, to those benefitting by the will, if this favorable outcome had not been achieved, are apparent.

The foregoing sketchy outline which omits reference to other matters inuring to the advantage of the estate (notably the attainment of blockage with reference to the Merchants Fire Assurance Corporation stock) will afford a perhaps inadequate understanding of the difficulty of the task confronting the executors' attorneys throughout and the address and acumen displayed without which the final result could not have been accomplished. It fails to indicate the experience, learning and industry that is evident from an examination of the briefs and working papers submitted as exhibits and the prodigious labor expended in the collection, analysis and annotation of cases examined in preparation for the presentation of the matter, particularly before the Board of Tax Appeals and Circuit Court of Appeals, all of which as well as the results attained are important considerations in the determination of what compensation may be deemed fairly allowable. The prestige and standing of counsel in their profession is another. Admittedly this is of the highest. Likewise, experience, particularly in the branch of the law affecting the problem dealt with. Mr. Conklin has practiced his profession in New York

for some forty-three years, specializing in estate, tax and insurance law. While the estates which he has administered in more recent years have shown the dwindling effect of confiscatory State and Federal taxation, since 1913 he has either administered or been retained to assist in the administration of estates averaging from $1,000,000 to $15,000,000, especially in connection with the problems of Federal and State estate taxation. In his employment, the estate received the advantage, also, of his having represented Mr. Ballard personally over a period of a great many years; had prepared all of the *inter vivos* trusts referred to, and amendments made to them from time to time; and had drawn Mr. Ballard's last will. Mr. Bentley is a lawyer of long experience in a varied practice including corporate matters and estate taxation and has charge of the litigation for the firm arising in connection with such matters.

There can be no diversity of opinion as respects the elements to be considered in determining the fairness and reasonableness of compensation to which a lawyer may be entitled for services rendered his client. The rule stated in general terms is: "In the absence of an express contract of employment between an attorney and his client fixing the amount of the attorney's compensation, it is generally held that the attorney is entitled to what his services are reasonably worth, or what has usually been paid to others for similar services. The determination of this depends largely upon the circumstances of the particular case. Among other things to be considered are the importance and results of the case, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill, experience, and professional standing of the attorney, and the prominence or character of the parties, where it affects the importance of the litigation, as well as the amount or values involved or recovered." 5 *Am. Jur., Attorneys at Law,* §198, pp. 379, 380.

Substantially the same elements are recognized in New York. "The general rule is that an attorney . . . . deserves compensation according to the reasonable worth of his services." In arriving at their value, there is to be considered " . . . . the nature of the services rendered, the standing of the attorney in his profession for learning, skill and proficiency, the amount involved and the importance to his client of the result." *Randall vs. Packard,* 142 N.Y. 47, 56, 36 N.E. 823, 824. While no such

comprehensive statement appears in any single case in Connecticut there is no reason for doubting that the same considerations apply here. · In the absence of a contract governing the matter an attorney is entitled to receive the reasonable value of the services rendered. *DiFrancesco vs. Goldman,* 127 Conn. 387, 392. Important factors in such determination are the character and standing in his profession of the law of him who performs them, as well as the period of time he is engaged in practice, the experience that he has acquired, the degree of skill attained and the faculty exhibited by him in making use of his professional knowledge. *Slade vs. Harris,* 105 Conn. 436; *Stoddard vs. Sagal,* 86 *id.* 346; *Phelps vs. Hunt,* 40 *id.* 97.

As concerns the amount of the fees paid by the executors, the sum of $40,000 is allocated to what is termed the "straight administration" work performed for the executors. This sum was agreed upon when the firm of Conklin & Bentley undertook to do the work and is found to be fair and reasonable. The services to be rendered for which such fee was to be paid included all tax work connected with the estate left by Mr. Ballard. It did not include collateral matters such as claims by the Government that outright gifts or transfers to trusts made by the deceased during his lifetime should be included in the gross estate left and to be taxed accordingly as part of it. After the Department insisted that the transfers of stock of the Merchants Fire Assurance Corporation made in December, 1937, and those to the "Children's" and "Crehore" trusts should be considered part of the gross estate, the surviving executor paid the firm of Conklin & Bentley for their services up to and at the time when the decision of the Board of Tax Appeals was announced, a total of $15,000 on account of this additional work and shortly thereafter $15,000 more. It was then agreed that if the Circuit Court of Appeals reversed the Board of Tax Appeals and it became necessary for the executrix to appeal to the United States Supreme Court and if that tribunal sustained such adverse ruling of the Circuit Court of Appeals the entire charge would be the $30,000 so paid plus a reasonable fee for briefing and arguing the matter before these two courts; but if the judgment of the Board of Tax Appeals were sustained by the opinion of the Circuit Court of Appeals or by that of the United States Supreme Court if the Revenue Department appealed to that tribunal, the total fee would be $90,000 upon which the sum of $30,000 already paid would apply. It is found that this agreement was fair

and reasonable as, likewise, the fees provided for therein. Whether or not regard be had to the understandings between the executors or the surviving executrix respectively and counsel concerning the fees to be paid to the latter, the sums actually so expended, in view of the elements and factors referred to *supra,* are determined to have been necessary, reasonable and fair. In view of this conclusion the sum of $131,408.65 for such expense for counsel should be allowed in the final account. Even if it could be found that the executrix had paid more than a fair and reasonable amount for the very essential legal services that she obtained, it would not follow that she would not be entitled to credit for the sums actually so expended in her final account since there is no question that she acted in good faith and according to her honest judgment for the protection of the estate committed to her charge. *Hewitt vs. Beattie,* 106 Conn. 602, 613. Incidentally, it is not without significance that no party having an interest in the estate under the will has made any objection to the allowance of the account except the appellee special guardian who was appointed by the court of probate to represent infant remaindermen and "other unknown and undetermined persons." Under the conclusion reached there is no occasion to discuss the other provisions of the order and decree of the court of probate which furnished the occasion for the instant appeal.

The appeal is sustained; the final account involved as corrected and adjusted by the court of probate is corrected and adjusted to allow full credit to the sole surviving executor for the sum of $131,408.65 expended by her for legal services and disbursements of counsel, rendered to her in her official capacity as appears in said account.