Vail's Appeal from Probate.

### DAVID D. VAIL'S APPEAL FROM PROBATE.

A court of probate has power to go behind the report of commissioners upon insolvent estates, and marshal the general claims reported by them according to such equities as may justly, upon settled principles of equity, give some claims or classes of claims a preference over others.

A different rule was established by the case of *Hotchkiss* v. *Beach*, 10 Conn., 232, and was followed until the decision in *Ashmead's Appeal from Probate*, 27 Conn., 241. The rule established by the latter case should be adhered to that the law may be settled.

The opinion in that case commented on, and some of the views in it dissented from.

The chancery powers of a court of probate are only such as are incidental, connected with the settlement of a particular estate, and necessary for the adjustment of equitable rights. A priority among creditors or beneficiaries, to be decreed by a court of probate, must be founded on a clear, definable and specific equitable right, recognized as such in equity jurisprudence, and which a court of equity would enforce if the matter could be brought before it.

Where property held by an assigning debtor in trust goes into the hands of his assignee in insolvency, the assignee holds it subject to the trust and the creditors have no claim upon it.

APPEAL from a decree of the court of probate for the district of Winchester ordering the payment in full of certain claims allowed by the commissioners upon the insolvent estate of Charles B. Coe, assigning debtor, before the payment of other claims allowed by the commissioners; taken to the Superior Court in Litchfield county and tried before *Minor, J.*

The decree was passed upon the petition of David W. Coe and others, who had presented claims to the commissioners on the insolvent estate mentioned, and whose claims had been allowed and reported by the commissioners with other claims against the estate as general claims, no facts being reported by the commissioners with regard to any equities affecting the claims. The petition set up certain facts which the petitioners claimed created an equitable right in favor of their claims, which were described in the report as "notes of S. W. Coe & Son," to a precedence over the other claims allowed and reported and which were alleged to have been originally the debts of the firm of Coe, Shenehon & DeWitt, to which firm Charles B. Coe, the insolvent, had belonged. The decree

of the court upon the petition was as follows: "*Ordered,*. that whenever the assignee of said estate shall apply the assets of said estate to the payment of the debts thereof, the debts allowed by the commissioners as due to S. W. Coe & Son, shall be paid in full before any application of the assets of said estate is made in payment of any indebtedness allowed by said commissioners as originally the debts of Coe, Shenehon & DeWitt."

The following facts were found upon the appeal by the Superior Court:

Previously to the 13th day of August, 1868, Samuel W. Coe, and his son David W. Coe, were engaged in the transaction of a general mercantile business in Winchester, Connecticut, under the name of Samuel W. Coe & Son; and Charles B. Coe, another son of Samuel W. Coe, was engaged in business in the city of New York as a member of the mercantile firm of Coe, Shenehon & DeWitt.

Samuel W. Coe, being in declining health, was desirous of closing up the affairs of his copartnership and his personal affairs during his life-time, and reposing especial confidence in his son, Charles B., sent for him and he came from New York to Winchester.

On said 13th day of August, 1868, it was orally agreed by Samuel W. Coe, David W. Coe and Charles B. Coe, that all the goods and property of the firm of S. W. Coe & Son should be transferred to Charles B. Coe, for the sole and express purpose, and upon the express condition, of having them judiciously and prudently converted into money as speedily as possible by Charles B., and the avails paid by him to the creditors of S. W. Coe & Son in payment in full of the indebtedness of the copartnership, and the balance, if any remained, paid to the firm of S. W. Coe & Son; and that Charles B. should give his promissory notes for the amount that the goods and property were worth, payable to S. W. Coe & Son, the notes to be regarded as vouchers or memoranda of the transaction to show the value of the goods and property transferred to him; and after all the creditors of S. W. Coe & Son should be paid and any balance remaining should be paid to

the firm, the notes were to be given up to Charles B. Coe and cancelled; and any sum paid to the creditors of the firm by Charles B. was to be indorsed on the notes. In pursuance of this agreement Samuel W. and David W. Coe, on the 13th day of August, in good faith transferred all of the goods and property of S. W. Coe & Son, amounting to $17.750, to Charles B. Coe, and Charles B. in like good faith to carry into effect the agreement gave his five promissory notes, payable to S. W. Coe & Son, all bearing date Aug. 13, 1868, four for $4000 each, payable respectively in twelve, fifteen, eighteen and twenty-one months, and the fifth for $1750 payable in twenty-four months, as vouchers or memoranda showing the amount of goods and property so transferred. The appellees introduced parol testimony to prove all of the foregoing facts, except the amount of the notes and their tenor, to which testimony the appellant objected, but the court admitted the same.

The amount of the indebtedness of the firm of S. W. Coe & Son at the time of the transfer of the property was about $15,000, and the firm was not then in failing circumstances, nor was the transfer made in view of insolvency.

All of the creditors of the firm were advised of the transfer and acquiesced therein, but no other person had knowledge of the transaction, nor did Vail, the appellant, have any knowledge thereof at the time he became the owner of the notes hereinafter mentioned.

On the 25th day of August, 1868, Samuel W. Coe died, leaving a will appointing David W. Coe his executor, who has ever since been and now is acting as such executor in the settlement of his estate.

Immediately after the transfer of the property Charles B. Coe took possession of the property and commenced converting the same as speedily as possible into money for the purpose of carrying into effect the objects of the transfer, and so continued until the 14th day of December, 1868, and during that period he added to the goods and property so transferred, goods to the amount of $4,981.66 purchased on credit, and goods to the amount of $7,751.24 purchased for cash received

from sales of the goods transferred, and during the same period the sum of $2,669.31 was paid to the creditors of S. W. Coe & Son, and, on the 14th day of December, 1868, was indorsed on the note of $4000 so given by Charles B. which would first mature. The purchases on credit and for cash were made in good faith, for a more prudent and judicious disposition of the goods and property so transferred.

After the transfer Charles B. Coe continued to be a member of the firm of Coe, Shenehon & DeWitt until the 14th day of December, 1868, on which day that firm failed, and made an assignment, as did also the partners of the firm individually, of all their property in New York. Charles B. Coe also, on the 29th day of December, 1868, made an assignment to Asa D. Dickinson of New York, of all his property in this state, which assignment is now in the process of settlement before the court of probate for the district of Winchester. At the time of the assignment Charles B. Coe had no other property of any kind in this state except the goods and property so transferred to him by S. W. Coe & Son, and the goods added thereto, purchased on credit and for cash, and the same were taken possession of and converted into money by Dickinson under the assignment, and Dickinson now has the same in his hands ready for distribution according to law, and there are no other moneys or assets of the estate so assigned by Charles B. Coe in the hands of his assignee for distribution.

The notes given by Charles B. Coe to S. W. Coe & Son, were presented for the benefit of the creditors of S. W. Coe & Son by David W. Coe to the commissioners on the assigned estate of Charles B. Coe, and were by the commissioners allowed, but in the commissioners' report no mention is made of the fact of the notes being presented or allowed for the benefit of those creditors.

Vail, the appellant, became the owner of the paper and notes of the firm of Coe, Shenehon & DeWitt before the failure of that firm, and presented the same to the amount of $17,995.61 to the commissioners, who allowed the same "subject to the order of the court."

On the trial the appellees offered parol evidence to prove the agreement under which the property was transferred by S. W. Coe & Son to Charles B. Coe, and under which the notes were given by the latter to the former. The appellant objected to this evidence on the ground that it was contradictory to and variant from the promissory notes and variant from the contract evidenced by the notes; and, it being admitted that the notes had been presented to the commissioners on the estate of Charles B. Coe and by them allowed, and that the report of the commissioners had been accepted by the court of probate, the appellant further objected to the evidence on the ground that it was contradictory to the report of the commissioners, and to the action of the court accepting the report, and that the appellees having thus treated the notes as valid claims against the estate were estopped from now claiming that they were what the parol evidence if admitted showed them to be; but the court overruled the objections and admitted the testimony. The appellant also claimed that the decree of the court of probate ought to be reversed on the ground that, upon the facts claimed, the appellees were not creditors of Charles B. Coe, and the notes were not due as a debt and were not allowable as such, and that the jurisdiction of the court of probate was confined to the distribution of the assets among creditors, and the court had no jurisdiction to decide on the title of the assignor to the property assigned and on the rights to the assigned property of persons not creditors. But the court overruled these claims of the appellant and rendered judgment affirming the decree of the court of probate appealed from.

The appellant moved for a new trial.

*E. W. Seymour*, in support of the motion.

1. The jurisdiction of the court of probate depends upon the facts being as we claim them, and if the parol evidence is admitted and acted on the court of probate is ousted of jurisdiction. Its jurisdiction is given by section 73, tit. 11, Gen. Statutes. These courts have no general jurisdiction, but only the special jurisdiction conferred by the statute. So

far as relates to this case the court of probate has no jurisdiction over it except as an assignment of the property of Charles B. Coe, in trust for the benefit of his creditors. It is of the essence of the jurisdiction that, as subject matter of its jurisdiction, there should be property assigned of the assigning debtor, which property is subject to the disposition of such debtor for the benefit of his creditors. But the whole scope of the parol testimony is to show that the property inventoried as the property of Charles B. Coe, and as subject to his debts, is not his property and is not subject to his debts. The facts found upon the parol proof are that the property was transferred to Charles B. Coe in trust for the creditors of S. W. Coe & Son ; and the decree of the court of probate proceeds upon the ground that the goods in the hands of Charles B. Coe were not his goods, were not subject to assignment for his debts and for the benefit of his creditors, but were subject to a prior and different trust for the benefit of the creditors of S. W. Coe & Son ; and the court of probate attempts, in response to the petition of David W. Coe, virtually to execute that common law trust in favor of the creditors, not of the assignors in insolvency, but of S. W. Coe & Son.

2.   But even it the court of probate has general jurisdiction over the subject, it has no power in this particular case to make the order appealed from.   Whatever power the court has is conferred by section 135 of the act concerning the settlement of estates, Gen. Stat., p. 437. This power is confined to a distribution of the property *among the creditors of the insolvent.*   Now the parol proof offered, if admissible, proves that S. W. Coe & Son, are not creditors of Charles B. Coe. The very object of the parol proof is to show that Charles B. Coe is not debtor by the notes, but that the notes are vouchers and memoranda, and evidence, not of the obligations of a debtor, but of obligations of a totally different character, or of no obligations at all.   If Charles B. Coe owes the notes as a debt then he owns the property for which the notes were given as his own property, for it was his own individual notes which were given, and not as trustee ; and these were given

to S. W. Coe & Son as individuals, not as trustees, or as representing creditors. But if Charles B. Coe merely received the goods as a trustee for the creditors of S. W. Coe & Son, then Charles B. Coe owes no debt to S. W. Coe & Son, and S. W. Coe & Son cannot make Charles B. Coe their debtor on account of such transfer to him as trustee. He is trustee not debtor, and is trustee of a fund which is to be administered in the courts of equity and cannot be administered in a court of probate. As trustee for the creditors of S. W. Coe & Son he may be proceeded against in equity, and the goods, the subject of the trust, be subjected to equity jurisdiction, if upon investigation the facts relied on in this case should be sustained, or perhaps, if he has violated his trust, he may be proceeded against as a debtor by reason of such breach of trust, but no such breach of trust is here suggested or proved. But if he is proceeded against as a debtor on the notes, then the trust is abandoned, and if there ever was any such agreement as that stated in the petition, the parties have both abandoned it and acted not on the trust but on the transaction as creating the relation of debtor and creditor, and the property as passing to Charles B. Coe as his own property ; and after both parties have so treated the transaction it is too late to treat it otherwise. Even if S. W. Coe & Son were creditors with a lien on the property assigned, the commissioners must enquire into the value of the security, but neither commissioners nor courts of probate can settle contested liens ; courts of common law only can decide such questions.

*G. C. Woodruff* and *Hitchcock*, contra.

1. The parol testimony was properly received. It was not contradictory to the notes, but in confirmation and explanation of them.

2. The presenting of the notes to the commissioners is not an estoppel; the appellant was not misled by it, and it has none of the requisites of an estoppel.

3. The appellees are creditors. They had a pecuniary claim on Charles B. Coe, which it was proper for the commis-

sioners to act on. It was a claim properly enforceable through these notes. The finding of the commissioners that the appellants are creditors is conclusive.

4. The order of the court of probate on the facts found was equitable and just, and one which the court had a right to make. *Ashmead's Appeal from Probate*, 27 Conn., 241.

5. Under the facts found, the creditors of Coe, Shenehon & DeWitt have no just claim on this property, and have, therefore, no cause of complaint till the *cestui que trust* is satisfied.

6. But if the appellees are not technically creditors, they are entitled to the proceeds of this property as being *trust estate*. It is found to be wholly *trust property*. Trust property does not pass to the assignee, and so long as it can be traced enures to the benefit of the *cestui que trust*. *Moses* v. *Murgatroyd*, 1 Johns. Ch., 128 ; *Kip* v. *Bank of New York*, 10 Johns., 63. And on this ground the appellant has no claim on this property, and therefore no cause of complaint.

BUTLER, C. J. We have been embarrassed in the consideration of this case by the condition of our law in relation to the chancery powers of a court of probate, and by the peculiar character of the facts and proceedings. But after careful deliberation we are of opinion that the decree of the Superior Court, affirming the order of the court of probate, cannot, upon principle, be sustained.

In the case of *Hotchkiss* v. *Beach*, (10 Conn., 232,) it was holden that the sole power of determining the nature and character as well as the amount of claims against an insolvent estate, was confided by statute to the commissioners— that the courts of probate had no power to allow or disallow, directly or indirectly, any claim or demand against such an estate, and that the report of the commissioners was made peremptorily " the sole rule by which the judge is to order payment ;" and the court reversed an order of the court of probate marshalling the assets of the estate so as to deprive partnership creditors of a dividend from the individual property until individual creditors were paid, because the differ-

ence in the nature and character of the claims was not reported by the commissioners, but was afterward found by the court of probate. It was admitted or assumed in the case, though since otherwise decided, (*Camp* v. *Grant*, 21 Conn., 41,) that the individual creditors of a deceased part-- ner should first be paid from the individual estate, and the point of controversy, and the one decided, was that whether a partnership or an individual debt was a fact to be determined by the commissioners alone, and that if they made no dis-- crimination between the claims in their report, the court of probate could make none, but must order all paid as individ-- ual creditors. That decision was made in 1834 by Church, Chief Justice, and Daggett and Bissell, justices, Judge Peters being absent, and Judge Williams dissenting. If that decis-- ion is law now, the court of probate had no power to go behind the report of the commissioners and into an inquiry after equities between the creditors, but, as all stood on the same footing in the report, the court should have ordered all to be paid alike.

The decision was received and acted upon as law until 1857-8, when two decisions were made in relation to the assigned estate of the Grove Car Works, an insolvent corpo-- ration, which are in conflict with that of *Hotchkiss* v. *Beach*, (*Waterman's Appeal from Probate*, 26 Conn., 96, and *Ash-- mead's Appeal from Probate*, 27 Conn., 241.) In these cases, the court seem to have holden unanimously that it was not the province of commissioners to inquire into the nature and character of the claims or whether there was any ground of priority or preference in respect to the claims allowed, and that all equities between creditors must be inquired into and administered upon by the court of probate and that court only,—taking substantially the ground assumed by Judge Williams in his dissenting opinion in *Hotchkiss* v. *Beach*.

It is true the learned judge who gave the opinion in *Ash-- mead's Appeal* did not expressly admit that the court intended to overrule *Hotchkiss* v. *Beach*, and did attempt to discrimi- nate between the two cases, but his attempted discrimination did not relate to the point involved. He inquired whether

the court of probate could not regard *trusts* and *liens* adhering to the property, in the administration and apportionment of it, without regard to the report of commissioners or the statute relating to dividends, and said they could.    He then goes on to say that the case of *Hotchkiss* v. *Beach* contains no doctrine to the contrary of that, and in that he was right.    No member of the court in *Hotchkiss* v. *Beach*, nor any member of any court since the administration of estates was first given to the court of probate by a statute comprehensive in its terms, has ever doubted that proposition.    But the point decided in *Hotchkiss* v. *Beach*, and the point made by counsel in *Ashmead's Appeal*, was, that inasmuch as the commissioners had all necessary, incidental, legal and equitable power to determine, and must ordinarily inquire into and determine, the nature and character of the claims presented, and the statute made it the duty of the court of probate to apportion the assets ratably among those found to be creditors, " as allowed by the commissioners," it was necessarily the province and duty of the commissioners to find and report any facts connected with the nature and character of the claims which established an equitable right of priority in favor of one class of creditors over another.    The question then was not whose province it was to ascertain " trusts and liens adhering to the estate," but whose it was to determine *facts* connected with the *nature* and *character* of the *debts*, which established an equitable right of priority in the distribution of the assets, when those assets were *freed from all trusts and liens, and made ready for distribution.*

And it is perfectly apparent that there is an irreconcilable conflict, in substance and effect, between the decisions.    In *Hotchkiss* v. *Beach* the commissioners reported the debts without any finding of facts establishing any equitable right of priority between the creditors.    The court of probate found such right and decreed a preference, and the Supreme Court reversed the decree of the probate court. In *Ashmead's Appeal* the commissioners in like manner reported the debts without any facts establishing any equitable right of priority between the creditors, and the court of probate, assuming

that there was an equity, passed a similar decree, which the Supreme Court sustained. In one case the court go upon the ground that it is, by statute, the province of the commissioners and not of the court to find the equity. In the other, the court say that that construction of the statute is a harsh one and that it is the province of the court and not of the commissioners to find it. There can be no doubt that, in effect, the latter case overrules the former one. We accept the rule as adopted in the latter case because it is the later one, and because it is of vital importance that it should be settled, and not very important which tribunal finds the facts.

But while we thus, for the reasons stated, assent to the principle that the court of probate may go behind the commissioners' report, in marshaling the assets, we are by no means satisfied with other views and the reasoning adopted in the case, and the condition in which it leaves the law.

The judge of the court of probate is not a chancellor. He possesses chancery powers, but they are only such as are incidental, connected with the settlement of a particular estate, and necessary for the adjustment of equitable rights; and not to find and enforce equities, in the ordinary and loose sense in which that term has come to be used in the law. If there are trusts connected with the property, or liens upon it, or priorities enforceable in equity,—if through fraud, accident or mistake, a class of creditors or beneficiaries are entitled of right to relief as against other creditors or beneficiaries, he may marshal or distribute the assets so as to enforce or satisfy the right. But it must be a *right*—one which a court of equity would take cognizance of and enforce, if application could be made to such a court. In *Hotchkiss* v. *Beach* there was a then supposed equitable *right* of priority. A like *right* existed in *Peck* v. *Harrison*, (23 Conn., 118) in favor of other creditors, one being satisfied by a lien.

It is not easy to discover what right existed on which a priority in favor of one class of creditors against the Grove Car Works could be founded. The court of probate did not find any precise right and seems to have been governed by a general sense of equity. The facts of the case so far as they

appear in *Waterman's Appeal* and *Ashmead's Appeal*, do not show such right; nor is it easy to discover what precise right the Supreme Court found in *Ashmead's Appeal*. The judge who gave the opinion in that case, says: "A reference to the facts as they stand on the record is sufficient to show that there is a clear and undoubted equity in the appellees' favor. They became creditors after the company was formed under the statute, by supplying it from time to time with goods, as it needed them to carry on its regular business upon a professed capital of $200,000. But the appellants stand in no such position. They had large claims against Fales & Gray which they wished to make more safe and secure, and to that end formed a joint stock company, a sort of partnership with Fales & Gray, with a clear, unincumbered capital of $200,000, and the company at once assumed the debts. The company went on a short time, then failed and assigned, but not until they had received from the appellees and the class of creditors to which they belong, property to the amount of $23,000. Their capital, as we have said, was to be $200,000, but it turned out in fact to be but a small part of that sum, for there is but about $20,000 in the whole for distribution. We think that of this the appellants are not entitled to receive any part until the appellees are first paid in full. They themselves declared to the appellees and to all others by their public proceedings, and especially their certificates left with the secretary of the state and with the town clerk, that the company had a clear capital of $200,000. After this we think they cannot deny it or come in to carry off any portion of the capital to the prejudice of *bonâ fide* creditors. The injustice of such a course will be most apparent if we lay the stock company out of view and regard the appellants as partners assuming a corporate organization for their greater convenience. This we may do, and we think ought to do, in furtherance of justice and equity." * * * "But here is a fund of some $20,000 subject to distribution by the order of the court, and how shall distribution be made? Shall it be according to justice and equity and with reference to the liens and trusts which adhere to it, or shall no regard be had

to such equities?"   *   *   " This court held in the late case of *Peck* v. *Harrison*, (23 Conn., 118,) that although a debt is reported by commissioners to be due, yet if it is afterwards paid, it may be expunged from the report by the judge of probate, so that in this instance the report was not the only and absolute rule of apportionment.   Why then ought it to be in the administration of a fund subject to equitable liens and trusts ?   If the law permits it, and equity and justice demand it, why cannot the judge discriminate between classes of creditors as to specific funds ?   We think he may."

It is not clear from these extracts from the opinion of the court, (and they are all that bear upon the point,) what kind of equity they found in favor of the creditors preferred, nor on what precise ground they intended to place the decision,— whether on the ground of estoppel, or fraud, or upon the ground that looking through the corporate shell they could see that the creditors whose debts were assumed were partners and therefore debtors in effect in their relation to the other creditors, or upon " trusts or liens adhering to the estate," or upon a mere general impression of justice and equity—for all are alluded to and apparently relied upon in the opinion.   And by reference to *Waterman's Appeal* it appears that the facts were not fully comprehended, for the corporation received $340,000 in property as capital and fifty per cent. of the amount of their debts in cash for stock of the creditors, and did not assume the debts without any equivalent beyond the capital.

We have thought it our duty to be thus critical in relation to that case because it is apparent that counsel and the court of probate were misled by it in this case, and that it is calculated to mislead other judges of those courts and the profession.

Judges of probate should understand that they are not to decree priorities between classes of creditors whose claims are allowed by commissioners, nor in any case, on any loose impressions of " justice and equity," nor unless such priority is founded on a clear, definable and specific equitable *right*, recognized as such in equity jurisprudence, and one which a

court of equity could and would protect and enforce, if application could be lawfully made to such court therefor.

In this case the supposed equitable right on which the decree of the court of probate was founded, was a trust in Charles B. Coe, in favor of the creditors of S. W. Coe & Son. The property assigned by Charles B. Coe, the avails of which are now in the possession of Dickinson, was mainly derived from S. W. Coe & Son, and the court of probate found that the conveyance was not an absolute sale but a trust, and that the property purchased afterward by Charles B. Coe was also trust property purchased with trust money in furtherance of the trust. If that was so, what claim had S. W. Coe & Son upon it *as creditors*, or how can they be creditors of the estate? They are not the cestui que trusts. The creditors of S. W. Coe & Son sustain that relation to the fund. They have not paid the cestui que trusts—the creditors of S. W. Coe & Son, and become subrogated to their rights. Nor was it competent for them to present a claim *as cr{ itors* in behalf of the creditors of S. W. Coe & Son. If the {fore, in point of fact, the conveyance from S. W. Coe & S{ to Charles B. Coe was not a sale, but was a trust—in rela n to which we express no opinion—S. W. Coe & Son did not become creditors of Charles B. Coe unless for a balance after the cestui que trusts were paid, nor was the property assigned by Charles B. Coe estate which could be assigned, except as subject to the trust in favor of the creditors of S. W. Coe & Son.

We do not doubt the admissibility of parol evidence to prove an express trust in relation to personal estate, although the rule is otherwise in relation to real estate, and we have looked carefully at the finding of the Superior Court to see if the decree could be sustained on the ground that justice had been done. But the Superior Court has not found a trust in terms, nor such incontrovertible facts as would justify us in assuming that the claimed trust existed and must necessarily be found whenever and however the question should be tried. We are not at liberty therefore to sustain the decree on that ground.

Without therefore determining the question whether the

conveyance from S. W. Coe & Son to Charles B. Coe was, or was not, a trust, we arrive at the conclusion that if it was such, the decree of the courtof probate, giving a priority to S. W. Coe & Son as creditors, founded on the supposed trust, is not sustainable, and that the decree of the Superior Court must be reversed.

In this opinion the other judges concurred; except SEY-MOUR, J., who having been counsel in the case when at the bar, did not sit.