HARRISON HEWITT, ADMINISTRATOR, D. B. N., C. T. A., *vs.* DAVID BEATTIE ET ALS.

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., MALTBIE, HINMAN, BANKS and WOLFE, Js..

Although there is no statute of limitations applicable to an ante-mortem claim which has been duly presented against the estate of a deceased person, and never disallowed, the right of the creditor to assert a lien against the land of the estate may be waived or extinguished through gross neglect or unreasonable delay.

The conduct of the ante-mortem creditors in the present case reviewed and *held* to have extinguished their rights to subject land specifically devised by the testator to the payment of their claims, which could now be pursued only against such assets as · have been, or will be, reduced to money for the general purposes of administration.

Executors, who are also named trustees in a will, cannot, under circumstances such as those existing in the present case, be regarded as acting in the latter capacity unless the estate has been fully settled and their duties as executors fully performed.

An executor has no power to carry on the business of the testator, unless authorized by the Court of Probate under §5033 of the General Statutes, or unless the will, either expressly or by necessary implication from its terms considered in connection with the surrounding circumstances, directs him to do so.

Post-mortem claims were, at common law, recoverable only from the executor or administrator personally, who, if the obligations were incurred reasonably and in good faith, even though unnecessarily or in the exercise of a mistaken judgment, was entitled to reimbursement by allowance in his account. Section 5771 of the General Statutes, which gives the creditor a right of action against the fiduciary in his representative capacity and, if the

Hewitt *v.* Beattie.

"claim shall be found to be a just one, and one which ought to be equitably paid out of the estate," authorizes a judgment to be satisfied from the assets of the estate, merely creates a remedy by which the ultimate liability of the estate may be directly imposed, but does not change the nature of the claim, nor does it affect the personal responsibility of the executor or administrator; and he is entitled to reimbursement for the payment of a debt which would have been recoverable in an action under the statute.

The statute applies to claims arising out of "moneys paid or services rendered for the estate." *Held* that this embraces such charges as are ordinarily incurred in the administration of an estate, including claims for materials furnished; but that it does not refer to services rendered, or moneys advanced, by an executor or administrator in his official capacity.

As a general rule, an executor or administrator has no power to borrow upon the credit of the assets of the estate; but if, in the reasonable conduct of his trust, he raises or advances money to discharge obligations against the estate, such sums may be allowed to him in his administration account.

The fact that the statute of limitations has barred an action to enforce the personal liability of an executor or administrator, will not preclude an action under §5771 which is subject only to the equitable defense of laches; nor will the fact that an executor or administrator pays a claim against which he might have raised the bar of the statute, necessarily defeat his right to reimbursement from the assets of the estate.

A testator who leaves a large share of his estate in trust for the purpose of continuing his business, necessarily subjects it to the hazard of loss involved in a commercial enterprise, and, in the absence of a clear provision to the contrary, it cannot be assumed that he intended the trust property to be immune from the claims of creditors if the income should be insufficient to satisfy them.

Under §4944 of the General Statutes, lands specifically devised may not be subjected to the payment of claims against the estate, until all other assets have been exhausted.

General expenses of administration ordinarily have priority over the claims of ante-mortem creditors, and the latter over the claims of creditors incurred in conducting the testator's business, where, as in the present case, the estate has been kept open and the business conducted for many years solely in the interests of devisees and legatees.

The equitable principle of marshaling securities, which may be applied by Courts of Probate as incidental to their power in the settlement of estates, is that a creditor having two funds to which he can resort, while another creditor can look but to one

Hewitt v. Beattie.

of them, must seek satisfaction first from that fund which is not available to the latter.

If a claim is entitled, in part only, to priority, the burden is upon the creditor to establish the exact portion to which a preference is due; otherwise, the entire claim must be placed in the class having the lower rating.

A creditor of a business carried on by the executors of an estate, who has been paid in full, is under no duty to refund such portion of the payment as might be necessary to equalize distribution among all the creditors, for, unlike a legatee or an ante-mortem creditor who is entitled only to his aliquot share of the estate, the business creditor has a right to complete satisfaction, first from the assets of the estate and, if they are insufficient, then from the personal liability of the executors.

If the primary object of a testator, in leaving his estate in trust for the purpose of carrying on his business, was to provide annuities for his beneficiaries, that object will not be defeated by the failure of the business, for, after liquidation, the proceeds of the property may be invested and the income disbursed to the annuitants until the termination of the trust, at which time the principal may be distributed as directed in the will.

If a testamentary trustee declines to act, or becomes incapacitated, the Court of Probate should designate another.

Argued April 21st—decided October 3d, 1927.

Suit for the construction of the will of John Beattie, late of the town of Guilford, deceased, for advice to the administrator in the execution of his trust, and for a declaratory judgment, brought to the Superior Court in New Haven County and referred to James E. Wheeler, a committee, whose report of the facts was accepted and the questions of law arising thereon were reserved by the court (*Ells, J.*) for the advice of this court.

The facts stated in the report of the committee are as follows:

The plaintiff is the administrator, *c. t. a., d. b. n.,* upon the estate of John Beattie, deceased. Beattie died November 18th, 1899. He was possessed of about three hundred and twenty-five acres of land, a part of which had been developed by him as a quarry prop-

erty, personal property appraised at $64,397.61, and choses in action not appraised, but upon which his executors realized $15,482.27. Claims amounting to $35,036.86 were duly presented to the executors.

By the terms of his will he made some small bequests, devised a certain tract of land with the buildings thereon to his daughter, Isabel Sanborn, and then devised and bequeathed all the remainder of his property to two of his sons in trust, the provisions of the will relating to the trusts being stated in the footnote.

"Fourth. I give, devise and bequeath all of my estate, whether real, personal or mixed, and wherever the same may be situated, to my sons, Peter Beattie and John Beattie, Jr., to be held by them in trust for the purposes hereinafter set forth, and with the powers hereinafter mentioned and provided:

"(1.) I authorize said trustees, and I direct them, at their discretion, to sell and make good conveyance of any of my estate, whether real, personal or mixed, except the developed quarry property at Leete's Island, of which I am the sole owner; and I also authorize said trustees to convey any of my real estate, including any or all of my quarry property to, and to invest any of my personal estate in, a Joint Stock Company which they may form or cause to be formed under the laws of the State of Connecticut, for the purposes of carrying on the business of quarrying stone, dressing, preparing, selling and transporting stone, for any purpose for which stone may be used in the ordinary course of the business of constructing by contract or otherwise, public or private works of any description, in which the use of stone from said quarry shall be a part of the material employed and used, and for the purpose of quarrying, preparing and selling stone from any quarries belonging to said Joint Stock Company; provided, however, that said trustees shall always keep and hold at least three-fourths of the stock of such corporation in their names as trustees, such stock to be a part of the trust estate created by this will.

"(2.) Said trustees are hereby authorized and fully empowered to form and organize a Joint Stock Company under the laws of the State of Connecticut, and they may transfer to such company the whole or any part of the trust estate in their hands, subject, however, to the proviso, at all times at least three-fourths of the stock of such company shall be held by said trustees, as trustees, for the purposes named in this will.

"(3.) Said trustees are to pay from the net income of the trust

He also appointed the same two sons executors of the will. In a codicil, he directed that no part of the estate, either real or personal, should be disposed of for a period of three years, except that the executors might sell building lots at their discretion, and he also directed that all the proceeds of property sold should

estate in their hands, any annuities, charges or obligations which I may be under by reason of any contract or obligation I have entered into, and they may, at their discretion, set apart any part of the trust estate in their hands as a special fund, charged with the payment of such annuities, charges or obligations.

"(4.) After the payment of any charges or obligations as the same are set forth in the foregoing clause of this will, said trustees are directed to pay from the net income of the trust estate the sum of twelve hundred dollars ($1200) annually, during the continuance of her life, to my wife, Mary G. Beattie, such payments to be made in quarterly payments of three hundred dollars ($300) each.

"(5.) After the payment of the annuity to my wife, I direct my said trustees to pay from the remainder of the net income in their hands, the sum of four hundred dollars ($400) annually, to my daughter, Isabel Sanborn, in quarterly payments of one hundred dollars ($100) each, such payments to be made during the life of my said daughter.

"(6.) I direct my trustees, to pay, from the net income or from the principal of the trust estate, at their discretion, the sum of one thousand dollars ($1000) to each of the children of my deceased son, George Beattie, when such children shall become severally of the age of twenty-one years.

"(7.) After the payment of the annuities hereinbefore set forth I direct my trustees to pay the remainder of my net income as the same shall be annually ascertained, to my sons Peter Beattie, John Beattie, Jr., Frank Beattie, David Beattie and Thomas Beattie, to be equally divided between them; and in the event of the death of any one of my said sons before the termination of the trust herein created, I direct that the share which would have been paid to the said son from the net income shall be paid to the heirs of his body during the remainder of the trust, and if he shall leave no heirs of his body then one-third of the sum which such deceased son would have been entitled to receive shall be paid to his widow, if any; but if he shall leave neither heirs of his body nor any widow, then the share of the income which he would have received shall be divided among his surviving brothers; provided, however, that in making any payments to my son, David Beattie, either of income

Hewitt *v.* Beattie.

be added to his estate as a part of the capital or fund for business transactions.

Beattie had himself developed the quarry property and had built up a prosperous and extensive business in building stone. The two sons named as executors entered upon their duties and proceeded to carry on

or principal under the provisions of this trust, there shall be deducted from his share, at such time as my trustees in their discretion shall determine, the value of any portion of the estate to which my said son David may in any manner become entitled as heir at law or devisee of his mother, or as remainder man under the settlement made between myself and his mother.

"(8.) I direct my trustees to permit any or all of my said sons, if they continue to be sober and industrious, to have a share in the employment and management of the quarry business to be carried on as herein provided, and for such work as they may do in the employment or management of the same business they shall receive the same compensation as would be paid to any other person doing the same kind of work.

"(9.) Until my said trustees shall find it expedient and proper to organize a Joint Stock Company under the authority given in this will, I authorize them to use any or all of the trust estate herein devised to them, for the purpose of carrying on the quarry business, and the business of preparing, selling and transporting stone as it is now carried on by me at Leete's Island.

"(10.) Neither my said trustees or executors shall have the power to put any mortgage or any other incumbrance upon the real estate herein devised.

"(11.) When the last survivor of my said sons, Peter, John, Jr., Frank, David and Thomas, shall die the trust herein created shall terminate, and all of the estate belonging to the said trust shall be divided among the male heirs of the bodies of my said sons who may be then living, in equal portions, per capita; and if there shall be no male heirs of the bodies of my said sons then living, then said trust estate shall be distributed among the heirs at law of my said sons according to the provisions of the Statutes of Connecticut.

"(12.) If either or both of said trustees shall decline to act or shall resign or shall die, or otherwise become incapacitated to execute said trust, then I hereby authorize the Court of Probate for the District of Guilford to appoint a trustee or trustees, as the case may be, to fill the vacancy or vacancies. It is my wish that at least one of my said trustees should be either a person of experience in the quarry business, or a civil engineer of experience."

the business, continuing to do so until about September, 1919, when they ceased to hold office as executors. They never qualified or acted as trustees, or formed the corporation authorized in the will, nor did they have any authority from the Court of Probate to continue the business. From time to time they filed administration accounts, all of which were approved by the Court of Probate, and certain were sustained by the Superior Court upon an appeal taken to it. In carrying on the business they incurred large obligations, most of which were paid from the proceeds of the business, but approximately $60,000 of which are still unpaid. Of the claims presented to them as executors, called the ante-mortem claims, they paid all except a few which aggregated $2,638.93; one of these, amounting to $1,041.58, has been disallowed since the appointment of the plaintiff, but the remaining claims are still unpaid. The executors also paid annuities provided in the will, to the amount of $3,625, as stated in an account filed by them covering their acts up to 1909.

The demand for the building stone produced at the quarry gradually diminished after Beattie's death until the quarry could no longer be operated except at a loss, and there is no prospect of a resumption of the demand. At no time since the death of Beattie has it been expedient or feasible to utilize the property through the instrumentality of a joint stock corporation.

Since his appointment the plaintiff has endeavored to turn the assets of the estate into cash and, under authority of the Court of Probate, has sold substantially all of the personal property, some land which had not been developed as quarry property, and some buildings and timber. He has something over $19,000

in the bank. For the remaining land he has been offered as much as $40,000.

Upon these facts, and certain others bearing upon particular claims which will be stated in the opinion, various questions have arisen as to the plaintiff's duty in the settlement of the estate, and the various parties defendant make diverse claims as to their rights. The plaintiff seeks the advice of the court, and an adjudication of the rights of the parties in the nature of a declaratory judgment.

*Charles J. Martin,* for the plaintiff.

*Charles S. Hamilton,* for the defendants J. G. and J. Beattie.

*William B. Ely* and *Louis B. Zacher,* for the defendants Peter Beattie *et als.*

*William L. Hadden,* with whom, on the brief, were *David E. Fitzgerald, Philip R. Pastore* and *Ellsworth B. Foote,* for the defendants David Beattie *et als.*

*George E. Beers,* for the defendant H. C. Noble.

*Frederick H. Wiggin* and *William B. Dana,* for the defendant George E. Sanborn.

*Avery Tompkins,* for the defendant Patrick O'Keefe.

*Thomas J. Ryan* and *Elmer W. Ryan,* for the defendant The Bouker Contracting Company.

MALTBIE, J. Certain of the defendants claim that the so-called ante-mortem claims, presented to the executor and still remaining unpaid, are now barred by lapse of time. They were duly presented within the time limited by the Court of Probate, have never been

disallowed, and are apparently just claims. As we held in *Robbins* v. *Coffing*, 52 Conn. 118, in such a situation there is no applicable statute of limitation and it is not for this court to establish one. At the same time, it was early recognized in our decisions that the existence of a claim upon an estate cannot be permitted to take on the guise of a perpetual lien upon the land of the deceased, and that gross neglect or unreasonable delay should be held to be a waiver or extinguishment of it. *Griswold* v. *Bigelow*, 6 Conn. 258, 265; *Wooster* v. *Hunts Lyman Iron Co.*, 38 Conn. 256, 259; *Hewitt* v. *Sanborn*, 103 Conn. 352, 372, 130 Atl. 472; *Ricard* v. *Williams*, 20 U. S. (7 Wheat.) 59, 115. As pointed out in *Wooster* v. *Hunts Lyman Iron Co., supra*, the statute limiting the time within which administration may be taken out, General Statutes, §4978, has no application to proceedings to subject the land of the estate to the payment of a claim where administration has been duly granted; the discretionary right given to the Court of Probate by the statute, General Statutes, §4979, to proceed with the settlement of an estate after ten years, was not intended to subvert the policy of the law established by the cases cited; nor is this policy wholly served and obviated by the statute, General Statutes, §5017, which provides that no Court of Probate shall, except within ten years after the death of the deceased, order the sale of real estate of a deceased person, which has been, in good faith and for value, sold or mortgaged by the heirs or devisees. Had the ante-mortem creditors, whose claims are now unpaid, sought with reasonable diligence to enforce their rights, the situation of the estate strongly indicates that they would have been paid from funds forming a part of it without the need of recourse to the land specifically devised to Isabel Sanborn. These creditors are not in a position now to subject that land to their

claims. The devise and bequest to the trustees was residuary and not specific; *Weed* v. *Hoge,* 85 Conn. 490, 494, 83 Atl. 636; 4 Schouler on Wills (6th Ed.) §3056; and the property included in it was the primary fund for the payment of these claims. General Statutes, §4944. Whatever would be the situation were these creditors seeking, in an independent proceeding, to charge their claims upon this property, the "public mischiefs" and danger of harm which Judge Story, in *Ricard* v. *Williams, supra,* suggests as the probable result if creditors are given a perpetual lien upon the property of an estate, is not present in a situation like this, where the assets have been or will be reduced to money in the hands of the administrator for the general purposes of administration. As against the lands specifically devised to Isabel Sanborn, the ante-mortem creditors may not now assert any claims; but as against other assets in the hands of the plaintiff, those claims may be asserted in their proper order.

The most important question presented concerns the right of those to whom the executors incurred obligations in carrying on the business, to charge the assets of the estate in the hands of the plaintiff with payment of them. The finding of the court is precise, that the quarry business was carried on by the testator's sons as executors, and that they never qualified or acted as trustees. It also appears that the estate has never been fully settled or the duties devolving upon the executors fully performed. It is not possible, then, to regard them as acting as trustees in carrying on the business. *State ex rel. Htfd.-Conn. Tr. Co.* v. *United States Fid. & Gua. Co.,* 105 Conn. 230, 235, 135 Atl. 44. It is true that ordinarily an executor has no right to carry on the business of a testator; *Hallock* v. *Smith,* 50 Conn. 127; *Wheeler's Appeal,* 70 Conn. 511, 515, 40 Atl. 452; *Mathews* v.

*Sheehan,* 76 Conn. 654, 660, 57 Atl. 694; although by statute the Court of Probate may authorize him to do so, as far as is expedient prudently to wind up the business of the testator. General Statutes, §5033. However, a testator may direct that an executor continue his business, so far at least as is necessary to preserve the assets of the estate and to carry out his proper purposes. *Pitkin* v. *Pitkin,* 7 Conn. 307; 2 Woerner on American Law of Administration (3d Ed.) p. 1049; 24 Corpus Juris, 59. If we turn to the will, we find that the testator intended to have the quarry business continued as long as any one of his sons survived. He set apart for the carrying on of that business all his property, real and personal, except some small bequests and the land specifically devised to his daughter. He left personal property to the value of $64,397.61, with some choses in action not appraised, but upon which the executors realized $15,482.27. Claims were duly presented to the executors aggregating $35,036.86. Obviously these bare facts are sufficient to indicate that the settlement of the estate would necessarily consume some time. Until that estate was settled, the property to be devoted to the trust could not be transferred into it. *Ryder* v. *Lyon,* 85 Conn. 245, 253, 82 Atl. 573; *Goodsell* v. *McElroy Brothers Co.,* 86 Conn. 402, 407, 85 Atl. 509. To preserve the value of the quarry business, it would have to be carried on in the interval. This, the testator must have foreseen, and power in the executors to carry it on is necessarily implied from the provisions of the will and the situation of the estate.

Previous to the enactment of the statute, now appearing as §5771 of the General Statutes, the right of recovery of one to whom an executor or administrator had incurred an obligation in the performance of his duties was against the executor or administrator per-

. Hewitt *v.* Beattie.

sonally, and the only way in which the estate could be charged with such an obligation was through its allowance to the executor or administrator in his account of the sums paid by him. *Taylor* v. *Mygatt,* 26 Conn. 184, 190; *Burke* v. *Terry,* 28 Conn. 414; *Chambers* v. *Robbins,* 28 Conn. 544, 550. Such obligations as were properly incurred by an executor or administrator would be allowed in that account as a matter of course. On the other hand, obligations incurred by reason of positive misconduct or violation of duty on his part would not be allowed to him; although, if he acted reasonably and in good faith, the mere fact that, as later appeared, he had misjudged the situation or incurred expenses unnecessarily, would not prevent their allowance to him. *Robbins* v. *Wolcott,* 27 Conn. 234, 238. On obligations incurred under such circumstances that they might not be allowed to him out of the estate, he might be held personally liable. *Hallock* v. *Smith,* 50 Conn. 127, 128; *Burke* v. *Terry, supra.* Moreover, it followed from these principles that obligations incurred by an executor were not chargeable against an administrator, *c. t. a., d. b. n.,* who succeeded him. *Alsop* v. *Mather,* 8 Conn. 584, 587.

Under the statute, General Statutes, §5771, one to whom an executor or administrator has incurred an obligation growing out of money paid or services rendered to the estate, may bring an action against him or his successor in office in his representative capacity, and "if such claim shall be found to be a just one, and one which ought to be equitably paid out of such estate, the statute authorizes a judgment to be satisfied out of the assets of the estate; but it provides that if there be not sufficient estate to satisfy the claim, the claimant may pursue his legal remedy against the executor or administrator individually, for any balance due him, or may elect to hold him liable upon his personal

responsibility. This statute does not change the nature of the obligation incurred by an executor or administrator in the performance of his duties; it merely affords the creditor a remedy by which, without injustice to the estate, the obligation owed to him may be discharged immediately from the fund which in any event would ultimately bear the burden, and permits an action to be brought to recover upon it against a successor to the executor or administrator who incurred it. *Brown* v. *Eggleston*, 53 Conn. 110, 119, 2 Atl. 321. While in terms it provides merely that the claimant may bring an action to establish his right, an executor or administrator, or an administrator *d. b. n.*, may pay the claim without action, and, if the Court of Probate is satisfied that it would have been recoverable in an action under the statute, it may allow the sum so paid in the administration account.

It follows that, as regards the obligations incurred by the executors in this case, in carrying on the business, they are proper charges against the estate in the hands of the plaintiff only if they "ought to be equitably paid out of the estate"; that is to say, if they are such that, had the executors paid them, and sought to have them allowed in their administration account, the court should find, first, that they fell within the words of the statute, "growing out of moneys paid or services rendered for the estate"; second, that they are justly due; and, finally, that they were so incurred that they ought to be equitably paid out of the assets of the estate, holding in view the principles we have discussed. As we pointed out in *Hewitt* v. *Sanborn*, 103 Conn. 352, 375, 130 Atl. 472,—an action brought by the present plaintiff and involving the administration of this estate,—it is hard to understand, upon the bare facts before us, why the executors delayed so long in settling this estate. Yet, in considering

whether the claims of those to whom they became obligated ought equitably to be paid from the estate, it is to be borne in mind that, had the executors transferred the estate to themselves as trustees, in all probability they would have conducted it in the same way they have as executors; and that their conduct in carrying on the business as executors had received some sanction in the approval by the Court of Probate of the accounts they filed. While those who dealt with them might properly be holden to inquire as to their authority to carry on the business, yet, in view of all the circumstances, it would be hardly reasonable to determine the rights of creditors upon the basis of a duty resting upon the executors more speedily to settle the estate and transfer the property into the trust; whether the executors had violated their duty in this respect would depend upon many and varied circumstances necessarily within their peculiar knowledge. See 1 Mechem on Agency (2d Ed.) §§759, 760.

No doubt because of the failure of the parties to offer evidence before him, the committee's report does not state the facts which would be necessary in order to determine whether most of the claims of those to whom the executors incurred obligations should be paid from the assets of the estate in the hands of the plaintiff. All that we can say is that, upon the facts before us, there does not appear such misconduct or gross negligence on the part of the executors in continuing the business as would prevent such payment. This is true as regards the claim of one of the executors, Peter Beattie, for services rendered as an employee in the conduct of the business, if otherwise they are proper charges against the assets in the hands of the plaintiff. In this connection, we also advise that, while the statute uses the words "moneys paid or services rendered for the estate," it was obviously

meant to be inclusive of such charges as are ordinarily incurred by executors and administrators in the administration of the estate, and includes materials furnished. It would not,. however, include claims by an executor or administrator for services rendered in his official capacity, or growing out of moneys advanced by him or personal obligations assumed by or cast upon him in the course of the administration of the estate; these, if allowable at all, would have to be allowed to him in his administration account and would not be, under the statute, proper charges against the assets in the hands of his successor in office.

As to a few claims more facts are given, but we are asked no specific questions as to them and, with one exception, they probably are covered by the preceding general discussion. The exception is a claim made on behalf of the estate of one Noble, for a balance due on account of money which, the report states, was loaned to the estate, and for which a note was given. The Noble estate claims that the money so loaned was used for the purposes of the Beattie estate, primarily in connection with a certain so-called Astoria transaction, and was necessary to make available to the estate an asset inventoried as a part of it. The general rule is that an executor or administrator has no power to bind the assets in his possession by borrowing money upon their credit. 24 Corpus Juris, 71. But if reasonable conduct in the administration of the estate requires that he should advance money in the course of his administration to discharge obligations against it, the amount of the money so advanced may properly be allowed to him in his administration account. *State ex rel. Htfd.-Conn. Tr. Co.* v. *United States Fid. & Gua. Co.,* 105 Conn. 230, 239, 135 Atl. 44; *Guthrie* v. *Wheeler,* 51 Conn. 207, 214. While those from whom the executors borrowed money may not properly come

directly upon the assets of the estate, except under the provisions of the statute we have discussed, yet if the money was properly used by the executors in the performance of their duties, they would be entitled to be credited with the amount spent in their administration account. *Merchants National Bank* v. *Weeks,* 53 Vt. 115; *Allen and Hill, Exrs.,* v. *Shanks,* 90 Tenn. 359, 388-390, 16 S.W. 715; *Morehead Banking Co.* v. *Morehead,* 116 N. C. 410, 413, 21 S.E. 190; 3 Schouler on Wills (6th Ed.) §2457. If the claim of the Noble estate comes within the purview of that statute, it may by virtue thereof be paid by the plaintiff.

The obligations incurred by the executors in carrying on the business being primarily and essentially debts owed by them individually, they might set up to defeat their personal liability the same statutes of limitation as would apply in the case of similar debts owed by any individual, or might waive the bar of those statutes. Though they might have barred them by pleading the statutes, nevertheless, if they did pay them, and they were just claims, and the allowance of the sums so paid to the executors would cause no other prejudice to the estate than the mere use of its assets for that purpose, such payments might be allowed to them in their administration accounts. The statute, §5771, provides for the satisfaction from assets of the estate of claims which ought equitably to be paid from them. In determining whether the obligations incurred by the executors should now be paid from the assets of the estate, the mere fact that the period of the applicable statute of limitation had run would not be conclusive, but the matter should be determined upon equitable principles. The condition of the estate and the uncertainties which confronted those to whom the executors had incurred obligations both as to their rights and the proper methods to

enforce them, are sufficient to prevent the adoption, even by analogy, of the periods fixed by the statutes as barring their claims. These claims are subject, as regards delay in taking steps to enforce them, only to the defense of laches, of which prejudice is the essence. *State ex rel. McClure* v. *Northrop,* 93 Conn. 558, 565, 106 Atl. 504.

In this connection, we turn to the question whether there is any method by which the obligations now due from the estate, other than ante-mortem claims, can be ascertained. None is suggested and we know of none. At the same time, the plaintiff ought to be aware of any obligations he has incurred and of any incurred by the executors which have been presented to him. Eight years have now elapsed since the executors ceased to hold office. Any creditor who has not presented his claim to the plaintiff, or shall not do so in the further time that will be necessary to put the estate in condition for final settlement, will be in no position to complain if it be not kept open to satisfy it. Such a delay on his part would preclude, upon the principles we have just stated, the assertion by him of any claim to assets of the estate after it has been regularly settled.

In *Hewitt* v. *Sanborn,* 103 Conn. 352, 376, 130 Atl. 472, we held that, upon the facts then before the court, the heirs of Isabel Sanborn did not have title to the lands specifically devised to her by adverse possession, and there is certainly nothing in the facts presented in this report which suggests any different conclusion. We also held in that case, page 369, that those lands could not be held to respond to obligations incurred in the conduct of the quarry business. In the course of the opinion, we indicated that so much of the property as was devised and bequeathed to the sons as trustees would be held to respond to those obligations.

Certain of the defendants now point to some of the provisions of the will as indicating an intent on the part of the testator that none of the real estate, or indeed of the property comprising the trust, should be used to discharge obligations incurred in the business. In the will, he gave the trustees power to sell any of his estate except the developed quarry property, which could only be conveyed to the corporation, if one were formed as authorized by him, but in the codicil he limited the trustees' power of disposal so that they might not sell any part of the estate, real or personal, for a period of three years after his death, and he provided that the proceeds of any property sold should be added to the estate as a part of the capital or fund for business transactions. Until a corporation was formed, he authorized the trustees to use all the trust estate to carry on the quarry business; and he expressly forbade the trustees or executors to place any mortgage or other incumbrance upon the real estate devised for the trust. Beyond question the testator did contemplate that the expenses of the business would be paid out of the income from it and that the quarry property and equipment would remain a part of the trust. But he also must have contemplated that obligations would be incurred and debts become owing in the conduct of the business. It may well be that the trustees, or the executors, while carrying on the business would have no power voluntarily to encumber or alien any of the real estate, or any of the personal property not of such a character as naturally would be disposed of in the conduct of the business, except as authorized in the codicil, but when the testator directed that the business be continued, he necessarily put the property set aside for that purpose to the hazard of loss that might be incurred, and, in the provisions in question, he cannot be taken to have intended that it

was not to be subjected to the claims of creditors, if the income from the business proved insufficient to pay them. *Whitman's Estate*, 195 Pa. St. 144, 155, 45 Atl. 673. All the property set aside for the trust is subject to sale, under authority from the Court of Probate, if necessary to discharge obligations of the estate.

There are outstanding valid obligations chargeable against the estate, or some part of it, as follows: General administration expenses, incurred by the plaintiff, and by the executors in so far as, under the statute, they are now chargeable against the estate in the hands of the plaintiff; debts owing to creditors incurred by the executors in the conduct of the business, as far as they are now chargeable against the estate; and claims of ante-mortem creditors. The property of the estate, aside from the lands specifically devised to Isabel Sanborn, must be exhausted in the discharge of these obligations before recourse can be had to them. General Statutes, §4944; *Hewitt* v. *Sanborn*, 103 Conn. 352, 371, 130 Atl. 472. If that property does not suffice, then certain questions of priority would present themselves. The general administration expenses would ordinarily have priority over the claims of ante-mortem creditors. The executors received assets greatly in excess of the amount necessary to discharge all claims presented against the estate, and it is obvious that they have kept the estate open and continued the business so many years solely in the interests of devisees and legatees. In such a situation, the claims of ante-mortem creditors have priority over the expenses of conducting the business. *Whitman's Estate*, 195 Pa. St. 144, 148, 45 Atl. 673. On the other hand, neither the claims of the ante-mortem creditors, nor of those to whom the executors incurred obligations in conducting the business, could in any event be charged against the land specifically devised to Isabel

Hewitt v. Beattie.

Sanborn, while the general administration expenses might be; so there is presented a situation where there are two funds which may be charged with general administration expenses and one of those only is chargeable with the ante-morten claims and business debts. By the familiar equitable principle of marshaling, in such a situation the ante-mortem claims and business debts would be given priority as to the latter fund, that is, the property of the estate aside from the land specifically devised; the remainder of that property, if any, would be applied to the general administration expenses and the balance of those expenses would be charged upon the land specifically devised. *Weidemann* v. *Springfield Breweries Co.*, 78 Conn. 660, 665, 63 Atl. 162. While this is an equitable doctrine, and Courts of Probate have no general equitable powers, its application is so much an incident of the power of that court in the settlement of this estate that the principle may properly be applied. *Vail's Appeal*, 37 Conn. 185, 195; 3 Woerner on American Law of Administration (3d Ed.) §495.

One claim, that of the estate of Edmund Zacher, is for legal services rendered of a nature in part to fall within the class of general administration expenses and in part within the class of business debts, and the report states that it would be possible, but laborious and difficult, to separate the items pertaining to the two classes. Primarily the duty to make such a separation rests upon the claimants in their presentation of the claim to the plaintiff. If they cannot or do not make it, the claim can only equitably be placed in the class rating the lower as regards priorities, that is, among the debts incurred in conducting the business.

The plaintiff cannot recover back any portion of the sums paid by the executors to creditors of the business

even though the amount of the estate now in his hands should prove inadequate to pay the existing claims growing out of the business which are properly chargeable against it. The situation so presented would not be at all like that where an executor or administrator has paid to a legatee, or one who has presented a claim against the estate, more than his just share. In such a situation, the legatee or claimant is entitled only to his aliquot part of the assets of the estate. Each person to whom the executors have incurred an obligation is entitled to full payment. If he seeks it, he may receive his pro rata amount of the estate available for such payments; but if this does not pay him in full, he may look for the recovery of the balance to the personal liability of the executors. General Statutes, §5771. Those who have been paid have received nothing to which they were not fully entitled and no duty to refund rests upon them.

The finding of the court makes it clear that the quarry business could not in any event be carried on now except at a total loss and that there is no prospect of a change in the situation. Upon the settlement of the estate by the plaintiff, if any funds are left in his hands, they cannot be devoted to the trust specified in the will. By the terms of that instrument it is clear that, aside from such a desire as the testator might have had that the business he had founded and successfully developed should be continued, his intention was to benefit those for whom annuities were created and those to whom the principal of the trust was ultimately to be delivered on the death of the last surviving son. That it has become impossible to carry out so much of the testator's desire as has to do with the continuance of his business, is no reason why the intent to provide for annuities and the other payments specified in the will by holding the property of the estate

in trust and ultimately to have the principal distributed to those whom he has designated to receive it, should fail of accomplishment. From the facts in the report it does not appear that there are any children of the deceased son, George Beattie, who might claim the sums specified to be paid to them. The proper course to adopt is the appointment of a trustee, to hold and invest the property and to disburse the income in the payment of the annuities provided or, if it is insufficient, so much of them as may be paid from it, pro rata, and to distribute the principal at the death of the last survivor of his sons as provided in the will. *Hayden* v. *Connecticut Hospital for Insane,* 64 Conn. 320, 324, 30 Atl. 50; *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 283, 135 Atl. 555; *Newton* v. *Healy,* 100 Conn. 5, 10, 122 Atl. 654; 2 Perry on Trust (6th Ed.) §728. It does not appear from the report that the testator's sons named as trustees have ever declined to act as such or become incapacitated; but if that event occurs, the Court of Probate should designate another trustee. General Statutes, §4897; *Babcock* v. *African Methodist Episcopal Zion Soc.,* 92 Conn. 466, 475, 103 Atl. 665; *Eliot's Appeal,* 74 Conn. 586, 598, 51 Atl. 558.

The questions upon which we are asked to advise are twenty-four in number. Some of these are too general to justify consideration and several of the others put virtually the same question in different forms. So far as they are properly to be considered by us, we quote them in the footnote.

---

"A. Whether the obligations incurred by the plaintiff's predecessors in office in carrying on said quarry business are chargeable against the entire estate of said John Beattie, including the real estate specifically devised to said Isabel Sanborn.

"B. Whether said obligations, if not a charge against the entire estate of said John Beattie, and are a charge solely against the property devised by paragraph 4 of said will, whether they are

Hewitt v. Beattie.

We answer these questions as follows: To questions A and B we say: The obligations incurred by the executors in carrying on the quarry business are not

chargeable only against the personal property bequeathed by said paragraph, and not a charge against the real property; or whether they are a charge against said personal property and against all of the real property except the developed quarry property. . . .

"D. Whether, if the funds applicable to any obligations incurred by plaintiff's predecessors in office are insufficient to pay such obligations in full, it is plaintiff's duty to seek to recover from persons holding similar claims, who have been paid in full, the difference between the amount received by them, and the dividend which they would have received if all of the assets which ever were applicable to such payments were divided pro rata among all persons similarly situated.

"E. Whether plaintiff has authority under the will of said deceased, to sell all or any part of the real estate now owned by said deceased, and if only part of the real estate, what part plaintiff has authority to sell.

"F. Whether there is any method by which the obligations now due from said estate, other than claims due from John Beattie at the time of his decease, can now be ascertained.

"G. Whether plaintiff can now disburse any of the funds in his hands in payment of any charges incurred by him or his predecessors in office or claims presented to his predecessors in office during the time limited by the Court of Probate for the district of Guilford.

"H. If any portion of the land of said John Beattie is not subject to sale to pay debts or expenses, what land constitutes such portion.

"I. Whether all of the funds now in plaintiff's hands are subject to the payment, either of claims or of obligations incurred by plaintiff or plaintiff's predecessors in office. If any part of said fund is not so subject, of which such part consists. . . .

"M. Whether the ante-mortem claims are now barred by the statute of limitations, or have been lost by the laches of the claimants by failure to claim them during the time that the executors were engaged in attempting to settle the estate.

"N. Whether the post-mortem claims are barred by the statute of limitations where they accrued and were due more than six years next prior to the commencement of this suit.

"O. Whether the post-mortem claims incurred by the executors, while attempting to carry on the business of John Beattie, are a claim against any of the assets whatever of the estate of the said John Beattie, on account of the failure of the executors and persons

Hewitt *v.* Beattie.

chargeable against the land specifically devised to Isa-
bel Sanborn; in so far as they are within the terms of
§5771 of the General Statutes, they are chargeable

appointed by the will trustees to carry out the true intent of the will,
which was to carry on the business by duly qualified trustees.

"P.   Whether upon the resignation of the executors on the —
day of March, 1919, and the failure of appointment by the Court
of Probate of the district of Guilford, of any successors of said
trustees, the trust created under the fourth clause of the will termi-
nated as fully as if the sons, Peter, John, Jr., Frank, David and
Thomas, had died.

"Q.   Whether, upon the resignation of said executors and the
total failure of the trustees to qualify, and no successors having been
appointed, whatever estate now remains in the hands of the plain-
tiff shall be distributed in the manner set forth in paragraph 11 of
the fourth clause of said will of John Beattie, and whether the
plaintiff may now distribute said estate as set forth in paragraph 11
of the fourth clause, in the same manner as he could do if the said
five sons enumerated in said paragraph 11 of the will of John Beattie
were dead.

"R.   Whether the plaintiff can now distribute said estate as if
said trust had terminated and make the distribution as set forth in
said paragraph 11 of the fourth clause of the will.

"S.   Whether the land specifically devised to Isabel Sanborn in
and by paragraph 3 of the will of John Beattie is subject to the
payment of the ante-mortem claims against the estate of said John
Beattie.

"T.   Whether the land specifically devised to Isabel Sanborn in
and by paragraph 3 of the will of John Beattie is subject to the
payment of the administration expenses of the plaintiff's prede-
cessors in office, which include the expenses of carrying on the quarry
business.

"U.   Whether, if the answer to either of questions S and T is in
the affirmative, the plaintiff must not first apply personal property
not specifically bequeathed, personal property specifically bequeathed,
and real estate not specifically devised, to the payment of such
debts before subjecting the real estate specifically devised to Isabel
Sanborn to the payment of such debts.

"V.   Whether the defendants George E. Sanborn, Arthur Sanborn,
Edith N. Sanborn, Charles R. Sanborn and John B. Sanborn have
now title in fee simple to the real estate specifically devised to
Isabel Sanborn in and by paragraph 3 of the will of John Beattie.

"W.   Whether the plaintiff's predecessors, Peter Beattie and John
Beattie, Jr., are personally liable, either jointly or severally, for any

against all the property devised and bequeathed in the fourth article of the will. To question D we answer: No. To question G we answer: The ante-mortem claims, obligations incurred by the executors in the conduct of the business and other obligations incurred by them in the administration of the estate, within the limitations we have outlined in this opinion, as well as administration expenses incurred by the plaintiff, may be paid by him from the funds of the estate in his hands. To questions E, H, I, O, and U we answer: If it becomes necessary to do so in order to pay any of such claims or charges, all of the property of the estate in the hands of the plaintiff is subject to sale; but in determining that necessity, the fact that the first two classes of claims are not chargeable against the land specifically devised and that none of the claims are chargeable against those lands if there is other property in the estate sufficient to pay them, is to be regarded. To question M we answer: No. To question N we answer: The post-mortem claims are not barred by the statutes of limitation as regards their right to be paid from the assets of the estate; whether or not they are too stale to be satisfied from those assets is to be determined upon equitable principles in accordance with this opinion. To question P we answer: No. To questions Q and R we answer: No; any balance of the estate remaining after all claims and obligations chargeable against it are paid, should be placed in trust in accordance with this opinion. To question S we answer: No. To question T we answer: The land specifically devised to Isabel Sanborn is not subject to any of the expenses

of the obligations incurred by them, in and by reason of the post-mortem operation and management of the testator's business. If either or both are so liable for what amount or part of said obligation they are so liable, and of what such amount or part consists."

incurred by the executors in carrying on the quarry business; within the limitations we have pointed out, it may be subject to general administration expenses incurred by them. To question V we answer: No. To question W we answer: The executors may be held personally liable for the obligations incurred by them in the conduct of the business to the same extent as though they had incurred those obligations solely in their individual capacity.

In this opinion the other judges concurred.